```
 1  Pages 1 - 25

 2                  UNITED STATES DISTRICT COURT

 3               NORTHERN DISTRICT OF CALIFORNIA

 4            BEFORE THE HONORABLE WILLIAM H. ALSUP

 5  MIGUEL CASTANEDA,                    )
                                         )
 6               Plaintiff,              )
                                         )
 7    VS.                                ) NO. C 08-04262 WHA
                                         )
 8  BURGER KING CORPORATION, et al.      )
                                         )
 9               Defendants.             )Monday, 11-10-08
                                         )11:00 a.m.
10  _____)SAN FRANCISCO, CA

11                  TRANSCRIPT OF PROCEEDINGS

12            (Hearing on Plaintiff's Motion to Compel)

13  APPEARANCES:

14  For Plaintiff:         FOX & ROBERTSON, PC
                           3801 East Florida Avenue
15                         Suite 400
                           Denver, Colorado 80210
16                         (303)595-9700
                           BY:  AMY F. ROBERTSON, ESQ.

17

18                         LEWIS, FEINBERG, LEE, RENAKER
                              & JACKSON, PC
19                         1330 Broadway
                           Suite 1800
20                         Oakland, CA 94612
                           (510)839-6824
21                    BY:  JULIA CAMPINS, ESQ.
                           BILL LEE, ESQ.
22

23

24  Reported By:   Margaret "Margo" Gurule, CSR 12976
                    Pro Tem Reporter - US District Court
25
```

PDF created with pdfFactory trial version www.pdffactory.com

1    APPEARANCES: (Continued)

2

3    For Defendants:              GENOVESE, JOBLOVE & BATTISTA, PA
                                  Bank of America Tower
4                                 100 Southeast 2nd Street, 44th Floor
                                  Miami, Florida 33131
5                                 (305)349-2300
                                  BY:  **MICHAEL D. JOBLOVE, ESQ.**
6                                       **JONATHAN E. PERLMAN, ESQ.**

7                                 **GLYNN & FINLEY**
                                  One Walnut Creek Center
8                                 100 Pringle Avenue
                                  Suite 500
9                                 Walnut Creek, California 94596
                                  (925)210-2800
10                         BY:  **ADAM FRIEDENBERG, ESQ.**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com

1          **Monday, October 10, 2008; 4:36 p.m.**

2              **Courtroom 9; 19th Floor**

3          **DAWN TOLAND - Courtroom Deputy Clerk**

4          **THE COURT:**  All set?  All right, let's go to work.

5     Have a seat.

6          **THE CLERK:**  Okay.  Calling Civil Action C-08-4262.

7     It's Castaneda vs. Burger King.

8               Counsel, can you please state your appearances for

9     the record.

10         **MS. ROBERTSON:**  Your Honor, Amy Robertson for the

11    plaintiffs, and with me are Bill Lee and Julia Campins.

12         **THE COURT:**  Welcome back.

13         **MR. JOBLOVE:**  Good afternoon, Your Honor.  Michael

14    Joblove with Jonathan Perlman, Adam Friedenberg and Tom Archer,

15    on behalf of Burger King Corporation.

16         **THE COURT:**  Welcome back to you, too.

17         **MR. JOBLOVE:**  Thank you, sir.

18         **THE COURT:**  We're here on a motion to compel by

19    plaintiffs.

20         **MS. ROBERTSON:**  Thank you, Your Honor.  General Order

21    56 provides a streamline procedure for the parties to, in a

22    Title III case, to get together early in the case, take a look

23    at the premises and try to resolve it before taking any

24    additional time of the parties or of the Court.

25              While it was likely developed in the context of

PDF created with pdfFactory trial version www.pdffactory.com

1    single-facility cases, we would urge that in this context, it

2    would be a very useful device to attempt to resolve this

3    putative class-action case.

4          We have pled a proper class action.  And under some

5    precedence from this and other districts including the Moeller

6    case and *Lucas vs. Kmart*, we believe it's likely to be

7    certified.

8          In any event, the question before the Court today is

9    whether General Order 56 will be able to be used as a vehicle

10   to get the parties together to take a look at the premises and

11   to try to resolve that, or whether that process will have to

12   wait until after class certification.

13         Now, the defendants have argued in response that

14   they're going to file a motion to dismiss and that that's going

15   to make the class claims go away.  I would urge respectfully

16   that the class claims aren't going anywhere until there is a

17   full Rule 23 analysis of whether an appropriate -- whether

18   class action is appropriate here.

19         So the motion to dismiss may prove the obvious, which

20   is that Mr. Castaneda does not have individual standing as to

21   all 90 stores.  But it will not have the ability -- again, in

22   the absence of a Rule 23 analysis -- to strike the class

23   allegations.

24         So, very simply, beyond that, I guess we rest on our

25   pleadings, Your Honor.  We would urge that this is an

PDF created with pdfFactory trial version www.pdffactory.com

1    appropriate juncture at which to cause the defendants to give

2    us these addresses and the history of the stores so that we can

3    take a look at them and sit down and talk and see if we have a

4    way to resolve this without further litigation.

5              Thank you, Your Honor.

6              **THE COURT:**  Thank you.

7              **MR. JOBLOVE:**  Good afternoon, Your Honor.  Mike

8    Joblove on behalf of Burger King Corporation.  And thank you on

9    behalf of all of us for squeezing us in today.  I know it was

10   not your first choice, but we do appreciate that.  There are

11   several of us from out of town.

12             This is a case brought by Miguel Castaneda.

13   Mr. Castaneda has been to two Burger King Restaurants which he

14   claims were not accessible for him as a disabled person.  And

15   he has filed a claim alleging that, therefore, Burger King

16   Corporation is in violation of the Americans with Disabilities

17   Act.

18             These two restaurants are not owned or operated by

19   Burger King, rather Burger King is the lessor, the landlord.

20   And based on Burger King Corporation's leasehold interests,

21   plaintiff seeks to recover under the ADA both injunctive relief

22   and their damage claims under California State Law, the Unruh

23   Act and the Civil Protection Act.

24             Your Honor, General Order 56 is pretty clear.  The

25   order states that all discovery in an ADA case is stayed in

PDF created with pdfFactory trial version www.pdffactory.com

1   this court and that what the parties are charged with doing is

2   a joint inspection of the restaurants at issue.  There are two

3   restaurants that Mr. Castaneda have been to.  There are --

4   their addresses are in paragraph 42 of the complaint.

5           Under General Order 56, the parties are obligated to

6   do a joint inspection of those restaurants, to get together

7   without a mediator, and see if the issues can be resolved.  And

8   if not, then to go to formal mediation with a mediator.  What

9   plaintiff is asking in this case is for class discovery,

10  despite the stay of discovery.

11          The plaintiff is seeking class discovery even before

12  Burger King Corporation has filed its response pleading.  And

13  Your Honor, we do, as we suggested in our papers, intend to

14  file a motion to dismiss based on the plaintiff's lack of

15  standing to pursue a class-action claim beyond the two

16  restaurants he visited.

17          **THE COURT:**  But you haven't done that yet.

18          **MR. JOBLOVE:**  No, but we're willing to do that.  So

19  the problem here has been the scope of the restaurants.

20          **THE COURT:**  Well, I hear lawyers all the time say,

21  "Sometime in the future, we're going to do X.  Therefore, in

22  the meantime, we're going to do Y."

23          You know, well, you could have filed that motion a

24  long time ago.

25          **MR. JOBLOVE:**  Your Honor, the deadline --

PDF created with pdfFactory trial version www.pdffactory.com

1          **THE COURT:**  You could have filed it yesterday.

2          **MR. JOBLOVE:**  Your Honor, the deadline has not

3     arrived.  We have been working with the plaintiffs.

4          Here is what is interesting with their request.  The

5     class that they ultimately seek to create, it's on behalf of

6     individuals who have been denied access.  In their papers, they

7     say they have spoken with 1,000 people who have had

8     accessibility barriers.

9          What we have done is -- the parties have noted in

10    those papers -- is said to them, "Tell us the addresses -- give

11    us the addresses where your people have been, and we will tell

12    you whether or not these are restaurants in which Burger King

13    Corporation has a leasehold interest."

14         There are 600 Burger King restaurants in the State of

15    California.  Only 90 involve restaurants where Burger King

16    Corporation is the lessor.  And so what they're seeking at this

17    stage, whether or not we filed a motion to dismiss last week or

18    we file it when the Court deadline arises later this week, what

19    they're seeking is to circumvent the stay that's imposed by the

20    general order and to engage in class discovery despite the stay

21    that -- Your Honor, a motion to compel, which suggests an

22    obligation to engage in class discovery under Order 56 despite

23    the stay.  They haven't filed a motion to lift the stay.  They

24    haven't filed a motion for relief from the general order.

25         **THE COURT:**  Well, I can treat this as a motion to

PDF created with pdfFactory trial version www.pdffactory.com

1    limit General Order 56.

2              **MR. JOBLOVE:**  I understand that.

3              **THE COURT:**  All it is is it says that the Court --
4    I've got it right here -- "unless the assigned judge orders
5    otherwise."

6              **MR. JOBLOVE:**  And Your Honor, before we engage in
7    what they propose, which is the expensive exercise of
8    inspecting 90 restaurants, we would request that Your Honor
9    consider the question of standing and whether this action is
10   appropriate as a class action.  Because legally, Your Honor,
11   lawfully, it's not.

12             We're ready to inspect the two restaurants.  We have
13   given them voluntarily, even before this lawsuit was filed, the
14   addresses of any restaurant.  They gave us 30 addresses.  Only
15   two were BKLs, as we call them, and those are the ones whose
16   addresses were in the complaint.  The information that they
17   have put in their complaint on information and belief is
18   information that we have voluntarily shared with them pre-suit
19   in an attempt to resolve this dispute.

20             Our concern is, by seeking 90 addresses, whether or
21   not their clients have been to those restaurants, our concern
22   is they're attempting to create claims which don't already
23   exist.  General Order 56 is clear that they're arriving on that
24   order.  They claim they're entitled to it based on the order.
25   But discovery under that order is expressly stated.

PDF created with pdfFactory trial version www.pdffactory.com

1          And we would like the opportunity, before both

2    parties engage in an expensive exercise, as is our right under

3    the law, to have a question of standing heard.  We think there

4    are strong arguments, Your Honor.  These arguments are made in

5    good faith.  They're persuasive.

6          **THE COURT:**  Well, what is the reason that an ADA case

7    should be subject to class action -- I mean, I've had class

8    actions.  I've had all the students who were in wheelchairs at

9    City College as a class.

10         **MR. JOBLOVE:**  Well, it really depends on the

11   situation.  First of all, the law is typically a franchisor is

12   not liable under the ADA, because a franchisor such as Burger

13   King Corporation doesn't operate the restaurant.  So it's not

14   an operator.

15         There is a Fifth Circuit case, *Neff vs. Dairy Queen*,

16   which holds that, which has been widely cited.  But then the

17   question arises the cases you're probably familiar with

18   creating class actions are cases where the stores or location

19   are company run and don't enjoy that exception.

20         So, for instance, they have cited in their papers the

21   Taco Bell case or they have cited a case involving Kmart.  In

22   those cases, in each instance, the locations were company-run

23   locations.  And the holdings in those decisions are that the

24   defendants exercised control, control, control, rather, over

25   the construction -- the development of plans and the

PDF created with pdfFactory trial version www.pdffactory.com

1    construction and management and operation of those locations.

2           But this case is different.  We don't operate the

3    locations.  We won't have centralized control.  And so we have

4    an instance like this -- the cases we have cited in our papers

5    are clear that ADA claims are site-specific.  So what kind of

6    class -- if there are ADA violations, what kind of class might

7    arise based on Mr. Castaneda's visits?

8           Well, there may be a class of people, class of

9    disabled who, like Mr. Castaneda, visited those two restaurants

10   that are listed specifically in the complaint and suffered

11   discrimination or inadequate access.  And if there are barriers

12   at these restaurants, the Court would be asked to consider at a

13   later point whether or not a class for those site-specific

14   locations --

15          **THE COURT:**  Say there was a third restaurant that had

16   the identical layout?

17          **MR. JOBLOVE:**  What they would have to establish is

18   that Burger King Corporation controlled the design/construction

19   of that third location, assuming it was a lessor --

20          **THE COURT:**  Assuming that you're the landlord.  Let's

21   take the easier case.  You run the restaurant; you laid it out;

22   you were the architect.  It's exactly like the one that

23   Mr. Castaneda went to.  Why wouldn't that one be subject to a

24   class action?

25          **MR. JOBLOVE:**  Because they would have to establish --

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    first of all, the plaintiff -- the plaintiff in a case would
 2    have had to have visited the restaurant, because site-specific.
 3              THE COURT:  Well, you say that, but those are all
 4    district court cases that you cited.
 5              MR. JOBLOVE:  Your Honor, they are mostly district
 6    court cases that we cited, but that is the case law and there
 7    is no --
 8              THE COURT:  Well, but they're contrary.  Are you
 9    saying there is zero contrary law, case law?
10              MR. JOBLOVE:  Regarding the site specificities, all
11    the examples they relied on, and they had a long footnote in
12    their reply brief, two long footnotes, all of those are
13    company-operated, company-designed locations.  They don't
14    involve a situation like this where you're talking about
15    franchise locations where the franchisor is the landlord and is
16    not the owner/operator.  None of the cases they cite hold in
17    that vein.  And so all we're asking is let's live but General
18    Order 56.  Let's proceed.
19              THE COURT:  You're never going to be able to settle
20    this one case without dealing with the class allegations.
21              MR. JOBLOVE:  Well, Your Honor, it depends on what
22    the size of the class is.  It depends if Your Honor applies the
23    law that we think applies, and that is that a class of
24    individuals, at least as the complaint is now pled, relates to
25    the two restaurants visited by Mr. Castaneda.  Because the
```

PDF created with pdfFactory trial version www.pdffactory.com

1    remedies under the ADA in a case like this are site specific

2    where Burger King Corporation is not the owner/operator and did

3    not control, design, manage the construction and the like.  And

4    that's the kind of class we're talking about.

5            And we would request respectfully the opportunity to

6    make those arguments, which are frankly good arguments, and not

7    to basically vacate the provisions of General Order 56 which

8    stay discovery and not require us, both sides, to rush an

9    inspection of 90 restaurants, 88 of which may not be relevant

10   to this case.  We just request the opportunity to be heard in

11   the manner allowed by the Rules of Civil Procedure.

12           And we have been, so Your Honor knows, in constant

13   discussions trying to create -- trying to be creative, even as

14   we had our meet and confer today, with solutions.  We haven't

15   achieved one yet that the parties could come to by agreement,

16   but we certainly haven't ignored this.  And we're, both sides,

17   I believe, are acting in good faith in an attempt to reach an

18   agreeable solution.  But because we couldn't reach an

19   agreement, we're here, and so now we'd ask you to apply the law

20   and General Order 56.  Thank you.

21           **THE COURT:**  Any rebuttal?

22           **MS. ROBERTSON:**  Just one quick point, Your Honor.

23   Although I would also join in the expression that we have been

24   talking in very good faith, and we appreciate Burger King's

25   time in good faith.

PDF created with pdfFactory trial version www.pdffactory.com

1           I think a lot of what Mr. Joblove is talking about is

2      exactly -- he raises a number of facts that are precisely the

3      sorts of things that we will need to explore in class

4      discovery.

5           For example, he talks about a case out of the Fifth

6      Circuit holding that franchisors are not liable.  That's

7      certainly not by absolute.  The Fifth Circuit looked at a

8      number of factors.  That's not what we're relying on here.  The

9      ADA specifically holds lessors liable under 42 U.S.C. 12182 A.

10     And as far as the question of control, we have alleged on

11     information and belief, and you know, based on the good faith

12     information that we have, that a lot of the designs and

13     policies in these restaurants come from Burger King

14     Corporation.  So, again, that's going to be the subject of a

15     class discovery when we get the chance to take it.

16          At this juncture, the question is:  Can we get the

17     information we need to have informed class-wide settlement

18     discussions, and I would urge that General Order 56 ---

19          **THE COURT:**  Well, I'm going to have a follow-up about

20     that in a moment.  All right.  Thank you.

21          **MS. ROBERTSON:**  Thank you.

22          **THE COURT:**  All right.

23          **MR. JOBLOVE:**  Your Honor, may we have one other word,

24     my partner, who would like to add something?  Do you think

25     that's possible?

PDF created with pdfFactory trial version www.pdffactory.com

1          **THE COURT:**  All right, sir.

2          **MR. JOBLOVE:**  Thank you.

3          **MR. PERLMAN:**  Just to elucidate because I think --

4     Your Honor, Jonathan Perlman -- you asked an excellent question

5     about what if it's the same layout.  And the simple issue on

6     whether an ADA can be a class for multiple units, as my

7     partner, Mr. Joblove, talked about, is -- and as they have

8     talked about -- is whether or not, if you have an identical

9     layout, what you're really talking about is the plans and

10    whether or not the franchisor in this case is dictating how

11    restaurants are built.  In the Taco Bell Moeller case, which we

12    keep hearing about, corporate owned, they make the plans; they

13    do the construction.

14         In this case, the two restaurants -- the only two

15    restaurants that are in this complaint so far were built in the

16    1970s.  They are not Burger King restaurants.  They're pre-ADA.

17    So whatever plans were used doesn't matter.  They're not --

18    it's not a design and construction case.

19         Therefore, they can't allege on good faith that there

20    is a policy based on having been at two restaurants -- that's

21    their total standing -- that Burger King develops plans to

22    violate the ADA which it then presumably gives to its

23    franchisee who constructs restaurants and is telling them to

24    violate the ADA.

25         In the Taco Bell case, Taco Bell itself makes its own

PDF created with pdfFactory trial version www.pdffactory.com

1    plans, make its own layout.  And they alleged in the

2    complaint -- they visited about ten restaurants.  They allege

3    that each and every single one had their plans.  The plans had

4    the wrong cue line.  And every single plaintiff there alleged

5    that they had experienced a cue line that was too narrow as a

6    result.  They had a plan policy problem, and they alleged a

7    class case.

8            Here there is no allegation.  If you look at the

9    complaint, all they allege is Burger King has prototypes.

10   This -- the only two restaurants are pre-ADA.  So whatever the

11   prototypes is for those two restaurants didn't have to be in

12   compliance with ADA.  And I can tell you that the proto- --

13   they haven't alleged that the prototypes have an ADA violation

14   in them because any prototype that Burger King has ever used, I

15   believe, doesn't have one.

16           And we did give them those in pre-suit negotiations

17   which they were supposed to not use that information pursuant

18   to the confidentiality stipulations regardless.  They haven't

19   identified any type of policy that Burger King has that's in

20   violation of the ADA.

21           And when you look at the franchise cases where they

22   said franchisors aren't liable for their franchisee violations

23   in general, the reason was because the only documents that are

24   out there, franchisors give franchisees some prototypes, and

25   they have franchise agreements that say, "You must comply with

PDF created with pdfFactory trial version www.pdffactory.com

```
1    the ADA."

2             In the Eastern District of California, in the Days

3    Inn case, the Fifth Circuit, in the Dairy Queen case, in

4    several other cases which were prosecuted by the United States

5    of America, the Courts all said, That's not control when a

6    franchisor tells its franchisee you must --

7             THE COURT:  Well, you said you wanted a moment.

8             MR. PERLMAN:  I'm sorry.

9             THE COURT:  You're going on.

10            MR. PERLMAN:  Long and short:  There is no allegation

11   of a policy.  We're moving to dismiss the class allegations as

12   well as the --

13            THE COURT:  You haven't done it yet.

14            MR. PERLMAN:  The time to file hasn't occurred yet.

15            THE COURT:  Well, I'm sorry.  But I've got a motion

16   here, and you're just telling me in the future you're going to

17   do something.

18            MR. PERLMAN:  In their papers, they concede that it's

19   not time for class certification yet discovery.

20            THE COURT:  Not yet.  All right.  Well, thank you.

21   Please have a seat.

22            MR. PERLMAN:  Thank you.

23            All right.  Then I now give you my views.

24            MS. ROBERTSON:  Yes, sir.

25            MR. JOBLOVE:  Yes, sir.
```

PDF created with pdfFactory trial version www.pdffactory.com

1          **THE COURT:**  All right.  I don't agree with either of

2    you here, really.  I want you to -- I want to step back and I'm

3    going to say something that neither of you have surfaced.

4          In this job -- I have been on the job now nine and a

5    half years -- I have been shocked at the number of collusive

6    class settlements that have come across and having lawyers

7    asking me to approve them.  I'm not saying that anybody here is

8    trying to do a collusive settlement.  But that's the background

9    for the comment that I am about to give you.

10         Let's put it in a different context.  It's often the

11   case that someone will come in and say, "Oh, we've worked hard.

12   We've had a former magistrate judge of this court, now in JAMS,

13   work this out with us.  Here is the deal."

14         Absent class members give a huge broad release,

15   wiping the liability off the books of the company.  Class

16   members get a coupon, and the lawyer gets millions of dollars.

17   Is there anything wrong with that picture?  It's collusive.

18         So I have written several orders on this, and you'll

19   be well advised to go look at them.  I will not approve -- I

20   can see a collusive settlement coming through the door.  I've

21   gotten so used to seeing them.

22         So the idea that you would settle this case now on a

23   class basis is totally bogus.  First of all, your guy hasn't

24   been approved as a class rep.  Here's another thing that I see

25   now and then.  They come to me and they say, Now, here's what

PDF created with pdfFactory trial version www.pdffactory.com

1   the -- I know this is the way it works.  The defendant lawyers

2   says to the plaintiff lawyer out of court, "We will beat you on

3   Rule 23 certifications because your guys" -- you know, they

4   come up with -- whatever it is -- conflict of interest and not

5   representative of the class, made all these terrible statements

6   that will reflect badly on the class.  And so the plaintiff

7   gets gun shy and is unwilling to make or know they've got to

8   make a motion under Rule 23 for certification.

9          But instead, the defendant says, and the plaintiff

10  acquiesces and says, "Let's have a settlement conference now."

11         So they go in and they do a deal where, "What is

12  compromised?"

13         What the plaintiffs' lawyer is saying is I might not

14  get this certified at all.  Well, think about it.  If it

15  shouldn't be certified at all, they shouldn't be negotiated on

16  a class basis.  The lawyer's just looking out for himself.  Do

17  you see that?  Not looking out for the class.

18         On the other hand, if the class should be certified,

19  the defendant should be paying twice or three times as much.

20  So the idea that you would have a class negotiation before Rule

21  23 is decided bothers me.  It bothers me.  Because then -- it's

22  okay to have a settlement where the Rule 56 considerations or

23  the trial considerations are compromised, because that's on the

24  merits.

25         You can say, "Okay.  On the merits, the plaintiff has

PDF created with pdfFactory trial version www.pdffactory.com

1    goes three strong points.  On the defense, they've got three

2    strong points, so let's compromise at X million dollars."

3    Okay.  That's where you're doing it on the merits and the

4    clients get the benefit.  But they're taking a hit, too, but

5    they're taking a hit for the right reasons.

6         But if they're taking a hit because the lawyer picked

7    a bad representative who is not representative or who has

8    special defenses, it is just not right to start negotiating on

9    behalf of the class.

10        So the entire premise of the motion that you need

11   this discovery to settle on a class basis is not well-founded

12   because I wouldn't approve that anyway.  I would say, "Let's

13   see if Mr. Castaneda" -- what if it turns out that he is a

14   perpetual litigant or he sold out the class on other cases?

15        I'm not saying -- now, I have a great deal of respect

16   for the lawyers here.  But I can't treat you with special --

17   give you special privileges I won't give a lawyer who I do

18   suspect of collusion.

19        So the first thing you've got to do is prove that

20   this ought to be a class action.  Don't give me any settlement

21   proposals until after we get Rule 23 out of the way.

22        All right.  So that's point one.

23        Point number two is that the rule -- General Order 56

24   wasn't meant for this kind of situation, so I'm going to

25   suspend it.  And from right now, you can start asking for

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   discovery.  I'm not going to rule on whether you get this
 2   particular discovery, but I will say this:  The plaintiffs are
 3   entitled to get -- I'm not going to limit it to class
 4   discovery, either.  Right now you're entitled to ask for broad
 5   discovery on every issue in the case including class issues.
 6           Now, if the other side comes back with a legitimate
 7   reason saying this particular -- these items ought to be
 8   postponed until after Rule 23, probably I will grant a number
 9   of those.  But certainly these things should not -- these
10   things you're going to have to open your books on.
11           Which of these 90 stores belong to you?  Was there a
12   common set of architect plans?  All the things that the
13   plaintiffs are going to need to prove up their Rule 23.
14   Because here's -- I've seen this.  And look, after nine and a
15   half years, you see a lot of things.
16           The defense refuses to turn over all the documents.
17   Then Rule 23 comes, and then you say, "They have given us no
18   proof."  Well, how can they get you proof unless they get it in
19   discovery.  So I'm just telling you you're going to have to
20   turn over all the stuff at a minimum that would be usable for
21   Rule 23.  And if you don't, I'm going to presume it's common
22   proof.  So, look, that's just a practical way to do this.
23           All right.  I'm going to give you some more thoughts
24   here.  I wrote them down.
25           Go look at the Oracle case that I wrote about two
```

PDF created with pdfFactory trial version www.pdffactory.com

1    years ago.  That's the one that probably lays out my opinions

2    on collusive settlements the most clearly.  But there was one

3    in a derivative case that I threw out, as well, because it was

4    another sellout.  And then they would up wound up -- the

5    officers and directors wound up putting real money, several

6    million dollars into the corporation, and they wanted to give a

7    coupon.  They wanted to give a promise not to do it again.  No

8    way.  But the lawyer was willing to settle for that as long as

9    the lawyer got several million dollars.

10              Now, I'm not saying that you would do that, but

11   again, I can't give you special treatment because I don't

12   suspect that you would ever do such a thing.

13              All right.  I'm going to allow this discovery on a

14   case-by-case -- we will have to take up any limits on the scope

15   of discovery.  You're free to bring this motion that you say is

16   a home-run, and I'll consider it.  But until it's ruled on, I

17   am not going to gamble and say, "Oh, well, maybe it will be

18   granted."

19              The discovery is not limited just to these two

20   stores, because, again, the plaintiff has a right to try to

21   seek discovery to show that Rule 23 can be satisfied.

22              All right.  I've got two more things that I want you

23   to be aware of.  I have a capital case that starts in -- we're

24   going to start picking the jury next Monday.  It will probably

25   go six months.  This is going to be the hardest thing that I

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   have ever done because it's a lot -- there's already been more
 2   than 2000 entries in the court file, and there will be another
 3   2000 by the time it's over.  And I am not going to have much
 4   time for this case, I'm sorry and sad to say.
 5            I usually keep all the discovery myself.  But I'm
 6   thinking that maybe I should refer this to a magistrate judge
 7   for -- to supervise your discovery.  So I would like to get
 8   your input on that.
 9            All right.  What does the plaintiff say?
10            MS. ROBERTSON:  We have no objection to that, Your
11   Honor.
12            THE COURT:  Any objection by the defense?
13            MR. JOBLOVE:  No objection, Your Honor.
14            THE COURT:  All right.  I appreciate you taking that
15   load off of me.  I still will have to decide your motions,
16   which is fine.  I can do that.
17            I have -- I'll be honest.  I haven't had a case
18   except -- I haven't had one of these kind of cases.  I did have
19   a class action in an ADA where it was all the students at City
20   College, but I have never had one where it was all of the
21   patrons of a chain store, so this is a new one for me.  I am
22   not -- I've seen plenty where it was a one -- you know, one guy
23   in a wheelchair, but I have not seen one like this.
24            Now, is this a damages -- are you seeking damages?
25            MS. ROBERTSON:  Yes, Your Honor, under California
```

PDF created with pdfFactory trial version www.pdffactory.com

1    state law.

2            **THE COURT:**  Well, let me circle back, then.  There is

3    no way I would ever allow you to compromise a damage claim

4    without very thorough discovery.

5            **MS. ROBERTSON:**  Absolutely, Your Honor.

6            **THE COURT:**  So, in other words, if you ever had it in

7    your idea -- that everybody would give up their damage claims

8    in exchange for attorneys fees and remedial action going

9    forward, I will tell you now, that's a nonstarter --

10           **MS. ROBERTSON:**  Respectfully, Your Honor --

11           **THE COURT:**  -- if you're going to give up damage

12   claims.  For damage claims to be retained, that's a different

13   story.  Then they can bring their own lawsuit for damages.

14           But the idea -- see, that's the classic collusion.

15   Massive liability wiped off the face of the books; coupon given

16   to the class members; lawyers get a lot of money.

17           **MS. ROBERTSON:**  Respectfully, Your Honor, we were

18   counsel for the plaintiff class in *Lucas vs. Kmart* in which we

19   negotiated a $13 million settlement for the plaintiff class.

20           **THE COURT:**  All right.  Great.  Okay.  As I said

21   earlier, I'm not accusing anybody in this courtroom of -- but

22   if you had had my job for nine-and-a-half years, you would be

23   very jaded by now at what lawyers try to run by you, because

24   judges are so ready to sign anything that's stipulated to, it

25   often does get by the judges.

PDF created with pdfFactory trial version www.pdffactory.com

1          **MS. ROBERTSON:**  We absolutely take the admonition to

2    heart, Your Honor.

3          **THE COURT:**  All right.  Thank you.  All right.  So

4    anything more today?

5          **MR. JOBLOVE:**  No, Your Honor, not on our behalf.

6          **THE COURT:**  All right.  So you bring your motion.

7    And at the same time, you start propounding your discovery.

8    Discovery is wide open without limits, subject to motion

9    practice to reduce it.  Okay?

10          **MS. ROBERTSON:**  Thank you, Your Honor.

11          **MR. JOBLOVE:**  Thank you, Your Honor.

12          **THE COURT:**  All right.  See you soon.

13                    *(Hearing concluded at 5:05 p.m.)*

14

15

16

17

18

19

20

21

22

23

24

25

MARGARET "MARGO" GURULE, CSR 12976

PDF created with pdfFactory trial version www.pdffactory.com

```
 1                    CERTIFICATE OF REPORTER

 2           I, MARGARET "MARGO" GURULE, Pro Tem Court Reporter

 3   for the United States Court, Northern District of California,

 4   hereby certify that the foregoing proceedings in Case No.

 5   C-08-04262 WHA, Castaneda v. Burger King Corporation, et al.,

 6   were reported by me, a Certified Shorthand Reporter, and were

 7   thereafter transcribed under my direction into typewriting;

 8   that the foregoing is a true record of said proceedings as

 9   bound by me at the time of filing.

10           The validity of the reporter's certification of said

11   transcript may be void upon disassembly and/or removal from the

12   court file.

13

14

15                                  /s/
                                _____
16                              MARGARET "MARGO" GURULE
                                CSR No. 12976
17                              December 8, 2008

18

19

20

21

22

23

24

25
```

PDF created with pdfFactory trial version www.pdffactory.com