IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MIGUEL CASTANEDA, on behalf of
himself and others similarly situated,

    Plaintiff,

  v.

BURGER KING CORPORATION and
BURGER KING HOLDINGS, INC.,

    Defendants.
                                         /

No. C 08-04262 WHA

**ORDER RE DEFENDANTS'
MOTION TO DISMISS;
DEFENDANTS' MOTION FOR A
STAY OF CERTAIN
DISCOVERY; PLAINTIFF'S
MOTION TO COMPEL
REMOVAL OF CONFIDENTIAL
DESIGNATION**

**INTRODUCTION**

In this disability-rights action, plaintiff Miguel Castaneda sued on behalf of himself and others similarly situated for violations of the Americans with Disabilities Act as well as state law. Plaintiff alleges access violations at a subset of Burger King's restaurants in California: those that Burger King leases to or from other entities. Well before the Rule 23 stage, defendants move to dismiss the claims, *inter alia*, on the grounds that plaintiff lacks standing to assert claims with respect to those stores he has not alleged personally to have visited. Defendants also move to stay discovery into the class claims pending resolution of the instant motion to dismiss. Finally, plaintiff has filed a motion to compel removal of defendants' designation of certain discovery as confidential. For the reasons stated below, defendant's motion to dismiss is **DENIED**. Defendants' motion for a stay is also **DENIED**. Plaintiff's motion to compel removal of confidential designation is **GRANTED**.

**STATEMENT**

For the purposes of this motion, the following well-pled facts will be taken as true. Plaintiff, a resident of California, has incomplete quadriplegia and uses a wheelchair for mobility. Burger King Holdings is the parent company of defendant Burger King Corporation. Plaintiff alleges access violations at roughly 90 of Burger King's approximately 500 restaurants in California: those that Burger King leases to or from other entities ("leased stores") (Compl. ¶¶ 10–12, 23–24).[1]

Plaintiff alleges that the leased restaurants deny customers who use wheelchairs or scooters access to restaurant services on account of architectural or design barriers or discriminatory policies or practices. Those access barriers include inaccessible parking lots, entry and restroom doors that are too heavy, queue lines (to order food) that are too narrow for wheelchairs, inaccessible dining areas, and inaccessible restrooms. Plaintiff alleges that these access barriers are a result of intentional discrimination against the putative class (Compl. ¶¶ 1–2, 39–40, 44).

The complaint alleges that plaintiff has patronized "several" Burger King restaurants in California, including a restaurant at 677 Contra Costa Boulevard in Pleasant Hill and one at 2162 Railroad Avenue in Pittsburg, both allegedly leased restaurants. Plaintiff encountered access barriers such as those described above at those restaurants (Compl. ¶¶ 41–42).

Although the complaint does not purport to challenge a single, identical architectural design or access policy at all of the (approximately) 90 leased restaurants, it alleges several common characteristics among the leased restaurants. It alleges that some or all of those stores were built according to "one or a limited number of architectural design prototypes developed by Burger King." It alleges that Burger King exercises substantial control over some or all of the leased restaurants, including over the development, design, alteration, remodel, maintenance and operation of those restaurants. Burger King, it avers, has entered into development agreements requiring construction of some or all of the California restaurants, or the

---

[1] The complaint initially named Burger King Holdings, Inc, as a defendant, but the claims against Burger King Holdings, were dismissed without prejudice by stipulation, leaving only Burger King Corporation as a defendant (Dkt. No. 26).

2

performance of "re-imaging" programs at those restaurants, in accordance with Burger King designs; has provided building plans used to construct some or all of those restaurants; and has provided construction teams to aid in designing and building some or all of those restaurants. Finally, the complaint alleges that some or all of the leased restaurants are required to comply with Burger King's Manual of Operating Data ("MOD"), which contains official operating standards and procedures (Compl. ¶¶ 25–34).

Plaintiff alleges that some or all of the leased restaurants have been altered since 1992, when the ADA regulations regarding alterations went into effect. Plaintiff further alleges that some or all of those stores have undergone alterations, structural repairs and/or additions since 1970, when California access regulations went into effect (Compl. ¶¶ 37–38).

Plaintiff brings this action on behalf of a putative class that includes all individuals with manual and/or mobility disabilities who use wheelchairs or electronic scooters and who were thereby denied access by the alleged barriers. The class is alleged to consist of "at least several thousand members" dispersed across California (Compl. ¶¶ 13–14).

The complaint asserts three claims. The first claim asserts violations of the Americans with Disabilities Act. 42 U.S.C. 12182(a). The second claim arises under California's Unruh Civil Rights Act. Cal. Civ. Code §§ 51 *et seq*. The third claim is for violations of California's Disabled Persons Act. Cal. Civ. Code §§ 54 *et seq*. The complaint seeks declaratory and injunctive relief under the ADA, and minimum statutory damages for the two state claims.

Defendants now move to dismiss the complaint pursuant to Rule 12(b)(1), alleging a lack of standing and lack of subject-matter (diversity) jurisdiction, as well as under Rule 12(b)(6) for failure to state a claim. In the alternative, defendants move for a more definite statement under Rule 12(e) and move to strike the class allegations under Rule 12(f).

**ANALYSIS**

The party seeking to invoke the Court's jurisdiction bears the burden of establishing subject-matter jurisdiction. A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence. *Warren v. Fox Family*

*Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).[2] "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." If the Rule 12(b)(1) motion is a facial attack, a district court must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Defendants mount a facial attack, arguing that the ADA is inherently "site specific" or that the complaint does not allege commonality with adequate specificity (*see* Reply at 3).

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995 ). All material allegations of the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 340 (9th Cir. 1996). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1255, 1264- 65 (2007).

**1. STANDING TO ASSERT THE CLASS CLAIMS.**

Defendants challenge plaintiff's standing to assert the ADA claims against all 90 leased stores on a class-wide basis. Defendants contend that the claims should be dismissed for want of jurisdiction because plaintiff lacks standing to allege access barriers at any of the leased restaurants other than the two plaintiff specifically claims to have visited, and that the mere allegation of class claims does not create standing to challenge barriers at all leased restaurants in California.

Title III of the ADA forbids discrimination against disabled individuals in public accommodations. 42 U.S.C. 12181–12189. As the Supreme Court has explained,

---

[2] Unless otherwise indicated, internal citations are omitted from all quoted authorities.

4

1  "[Section]12182(a) sets forth Title III's general rule prohibiting public accommodations from
2  discriminating against individuals because of their disabilities. The question whether petitioner
3  has violated that rule depends on a proper construction of the term 'discrimination,' which is
4  defined by Title III to include" various practices, including "a failure to make reasonable
5  modifications in policies, practices, or procedures, when such modifications are necessary to
6  afford such goods, services, facilities, privileges, advantages, or accommodations to individuals
7  with disabilities." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 681–82 (2001) (quoting Section
8  12182(b)(2)(A)(ii)). Discrimination is further defined to include, *inter alia*, "a failure to
9  remove architectural barriers . . . in existing facilities . . . where such removal is readily
10 achievable;" "a failure to design and construct facilities for first occupancy later than 30 months
11 after July 26, 1990, that are readily accessible to and usable by individuals with disabilities;"
12 and "with respect to a facility or part thereof that is altered by, on behalf of, or for the use of an
13 establishment in a manner that affects or could affect the usability of the facility or part thereof,
14 a failure to make alterations in such a manner that, to the maximum extent feasible, the altered
15 portions of the facility are readily accessible to and usable by individuals with disabilities,
16 including individuals who use wheelchairs." 42 U.S.C. 12182(b)(2)(A)(iv); 12183(a).[3]

17 Defendant contends that plaintiff cannot "create" standing as to non-visited restaurants
18 merely by making class allegations. Defendants insist that plaintiff's standing is limited to
19 challenging barriers at those restaurants plaintiff actually visited, or at least those restaurants
20 plaintiff was actually deterred from visiting due to known violations at that specific location,
21 but not at the remaining 90 or so leased stores in California.[4]

---

[3] As the Ninth Circuit has explained, "[a]n individual alleging discrimination under Title III must show that: (1) he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004).

[4] The complaint specifically identifies two stores that plaintiff visited and encountered barriers. Plaintiff subsequently submitted a declaration identifying seven additional stores plaintiff had visited which, plaintiff explains, he only subsequently learned were also leased stores.

5

Article III standing for ADA claims is not inherently site specific. The "irreducible constitutional minimum" of standing contains three elements: (1) the plaintiff must have suffered an "injury in fact" — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). When a plaintiff seeks injunctive relief, the plaintiff's showing of legal injury must include establishing a sufficient likelihood that he will again be wronged in a similar way. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). For ADA claims, however, "[a]llegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 (9th Cir. 2008). Here, plaintiff seeks declaratory and injunctive relief in the ADA claims and minimum statutory damages (as well as injunctive relief) in the state claims.

As stated, the ADA proscribes not only discrimination resulting from a particular physical barrier at a specific location but rather discriminatory practices — "policies, practices, or procedures" that affect public accommodations and "failure[s] to design and construct facilities for first occupancy . . . that are readily accessible to and usable by individuals with disabilities." As the Ninth Circuit recently explained, albeit in an individual action challenging multiple access barriers a specific location rather than a class action spanning multiple locations,

> it is not an essential prerequisite of an ADA plaintiff's standing that he prove that deterrence caused by previously encountered violations was the reason that a particular violation was not discovered and hence alleged in his complaint. Such an individualized causal showing is not required because *it is ultimately misleading to conceptualize each separate architectural barrier inhibiting a disabled person's access to a public accommodation as a separate injury that must satisfy the requirements of Article III* . . . . Given that an ADA plaintiff has standing because of deterrence from returning in the face of uncertainty, it is prudent to eliminate that uncertainty through the judicial device of discovery, thus allowing the plaintiff to obtain

6

> by formal means the information about the scope of the
> defendant's violations.

*Doran*, 524 F.3d at 1042–43 (emphasis added).

Although no Ninth Circuit decision specifically regarding the scope of ADA injury in the context of class standing has been found, most district courts to have considered the issue find that a plaintiff may challenge discrimination on behalf of a class where the discrimination arises from a common policy or practice, or a common architectural design, at multiple commonly owned or affiliated locations. As a decision in this district explained:

> the specific theater design features challenged by plaintiffs are ones . . . they allege exist or have existed in many if not all of defendant's theaters during the relevant period . . . . [I]it follows that the legality of those features are legal issues common to the claims of the members of all of the subclasses. In addition, where, as here, plaintiffs challenge conditions at several sites, all owned by a single corporate defendant, the legal standard applied under the ADA to evaluate the adequacy of the accommodations at each of the respective theaters is one that hinges, in part, on various corporation-wide factors such as the availability of resources.

*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994) (Henderson, J.) (on a motion for class certification).[5]

This reasoning equally applies where the various stores are not commonly owned but are affiliated in some other relevant manner such that the discriminatory practice derives from a common source. For example, *Access Now* certified a class challenging practices at some 350 to 400 medical facilities, explaining that "[w]hile the Defendants herein are not jointly owned or operated, they do share a unique link in the area of construction and building code (including ADA guidelines) compliance through a services agreement. Pursuant to this voluntary agreement, the Defendants have availed themselves of a common program of construction,

---

[5] *See also, e.g.*, *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 609 (N.D. Cal. 2004) (explaining, on a on class certification motion, "[a] number of courts have held that where people who use wheelchairs encounter the same types of barriers at a number of commonly-owned or affiliated public accommodations, commonality is established and class certification is appropriate"); *Lucas v. Kmart Corp.*, 2005 WL 1648182 (D. Colo. 2005) (certifying nationwide class where "Plaintiffs sought injunctive relief to correct these centralized policies and practices that created architectural and related barriers and impeded the ability of wheelchair-bound shoppers from using or enjoying access to Kmart"); *Colorado Cross-Disability Coalition v. Taco Bell Corp.*, 184 F.R.D. 354 (D. Colo. 1999) (similar); *Access Now, Inc. v. Ambulatory Surgery Center Group, Ltd.*, 197 F.R.D. 522 (S.D. Fla. 2000).

7

design." *Access Now, Inc. v. Ambulatory Surgery Center Group, Ltd.*, 197 F.R.D. 522, 526–27 (S.D. Fla. 2000).

This order agrees: ADA standing is not necessarily site specific. The conclusion does not abrogate the need to establish individual standing; rather, it simply recognizes that the specific injury under the ADA is not a specific barrier at a specific site but instead the discriminatory policy or design or decision. If an offending policy or design gave rise to more than one violation, then reversing the policy should eliminate more than one barrier.

Here, the complaint alleges the existence of several common barriers among the leased restaurants. It also alleges that those common barriers (at some or all of the 90 restaurants) arise from various common policies or designs. As stated, the complaint alleges that some or all of those stores were built according to "one or a limited number of architectural design prototypes developed by Burger King." It alleges that Burger King exercised substantial control over some or all of the leased restaurants, including over the development, design, alteration, remodel, maintenance and operation of those restaurants. Burger King allegedly entered into development agreements requiring construction of some or all of the California restaurants or the performance of "re-imaging" programs at those restaurants in accordance with Burger King designs. Burger King also allegedly provided building plans used to construct some or all of those restaurants and provided construction teams to aid in designing and building some or all of those restaurants (Compl. ¶¶ 25–34).

It is true that the pleadings do not pinpoint the exact common policy or design features allegedly giving rise to the violations at the 90 stores with particularity, but courts do not apply a heightened pleading standard to ADA claims and the allegations here set forth the "grounds" for an entitlement to relief on a class basis at more than a conclusory level. Indeed, few decisions have been found denying a plaintiff who alleges such a common policy or practice the opportunity to engage in discovery in order to prove his or her claim. This is not to say that plaintiff will be able to satisfy Rule 23 at the class certification stage. It is only to say that there is enough pled to allow discovery on the class issues so that plaintiff will have a fair chance to develop his Rule 23 motion.

Contrary to defendants, *Clark v. Burger King* did not apply a different rule. It reasoned that "[a]s to places Clark ha[d] yet to visit, absent any allegation that there exist[ed] (1) particular commonality of construction, or (2) that BKC implement[ed] a corporate policy violative of the ADA at Burger King restaurants, Clark clearly lack[ed] standing." *Clark v. Burger King*, 255 F. Supp. 2d 334, 343–44 (D.N.J. 2003). It simply found that the plaintiff had failed to plead such commonality and therefore the plaintiff's standing was limited to stores actually visited. The decision cautioned, however, that "[i]f, on the other hand, there existed an allegation that all Burger King restaurants are similar, in that they possess commonality of architecture, or that they implement a corporate policy violative of the ADA, Clark may have standing as to restaurants he has yet to visit." *Id*. at 343 n.11. *See also Clark v. McDonald's Corp.*, 213 F.R.D. 198, 221, 230 (D.N.J. 2003) (similar; rejecting class claims but explaining that "[h]ad plaintiffs alleged, for example, that McDonald's and its franchisees adhered to a company-wide policy [contrary to the ADA] . . . then one could imagine why injunctive relief-against the defendants as a class-might be appropriate to redress such violations").

Defendants also cite decisions regarding franchisee-franchisor relationships which have rejected class claims. Those decisions, however, rejected the class claims at *summary judgment*, not on the pleadings, and in all respects applied an inquiry consistent with that here described. For example, a decision of the Fifth Circuit explained: "Neff argues that the terms of the [franchise agreement] demonstrate that [the defendant] exercises sufficient control over the San Antonio Stores to bring [it] within the scope of [the ADA's public accommodation provisions]. We hold that the relevant inquiry in a case such as this one is whether ADQ specifically controls the modification of the franchises to improve their accessibility to the disabled." *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063 (5th Cir. 1995) (addressing whether the defendant "owns, leases (or leases to), or operates a place of public accommodation" for purposes of Section 12182(a)). Although *Neff* ruled that the inquiry was a legal rather than factual question because only the agreement's effect under the ADA — not its meaning — was disputed, the decision did *not* rule that the issue should be decided *on the pleadings*, thus depriving the plaintiff the opportunity to have identified the agreement at the

9

1 Rule 23 stage.  *See also United States v. Days Inns of America*, 1998 WL 461203 (E.D. Cal.
2 1998) (similar).

3   To be sure, at least one decision has described ADA claims as "site specific." *Moreno v.
4 G & M Oil Co.*, 88 F. Supp. 2d 1116 (C.D. Cal. 2000).  The relevance of the decision is unclear.
5 In *Moreno*, the plaintiff "want[ed] injunctive relief for himself and others similarly situated
6 concerning [82] locations, based on Defendants' common practice of noncompliance with
7 disability requirements."  The decision found that the plaintiff did have Article III standing as to
8 the site he had visited and proceeded to inquire whether the plaintiff could assert violations for
9 the other 82 sites at which he had not personally suffered discrimination.  It concluded that the
10 ADA's anti-barrier provisions are "site specific" and found that the plaintiff could not "assert
11 the rights of third parties at sites where he has suffered no injury."  The decision, however, had
12 framed the question as one of *prudential* rather than Article III standing and simply purported to
13 reject "a generalized grievance of similar barriers at other locations or [claims for] injuries
14 suffered by third parties at other locations." *Id*. at 1116–17.  In any event, insofar as the
15 decision found ADA claims to be *inherently* site specific — limited to specific barriers at
16 specific locations irrespective of the origin or circumstances of those barriers — this order
17 respectfully disagrees and will follow the weight of authority.

18   Defendants also rely on inmate cases such as *Casey v. Lewis*, 4 F.3d 1516 (9th Cir.
19 1993).  Those decisions offer defendants no support; they simply hold that inmates suing to
20 enjoin a policy which has injured them may not also sue to enjoin other policies which have not
21 caused them injury.  For example, *Casey* concluded that inmates who had standing to challenge
22 a prison policy "denying attorney-client contact visitation to prisoners housed in [certain]
23 lock-down units" lacked standing also to challenge a "policy prohibiting HIV-positive
24 individuals from obtaining employment in its food-service department."  Named plaintiffs had
25 been injured by the former policy; although one named plaintiff was HIV-positive, no named
26 plaintiff had been injured by the latter because no plaintiff had been denied, nor even expressed
27 interest in, a food-service job.  Here, plaintiff challenges a policy which allegedly injured him:
28 a policy of barriers at Burger King restaurants discriminatory to individuals in wheelchairs; he

10

does not also seek to challenge a different policy discriminatory to other individuals with other disabilities.

Finally, defendants cite several other decisions which are equally unpersuasive because they arose on summary judgment and/or rejected individual, rather than class, claims for reasons not entirely analogous to the issues here presented. *See, e.g.*, *Tyler v. Kansas Lottery*, 14 F. Supp. 2d 1220 (D. Kan. 1998) (summary judgment; individual claims; plaintiff lacked standing because had relocated to a new state); *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249 (M.D. Fla. 2000) (summary judgment; individual rather than class claim; plaintiff lacked standing as to certain facilities because claims as to these facilities were inconsistent and purely conjectural).

For all of these reasons, this order finds that the complaint adequately pleads the existence of common discriminatory barriers or policies at the California-leased stores. As explained below, discovery into the class claims should proceed immediately.

**2.   ADDITIONAL CHALLENGES TO THE ADA CLAIM.**

Defendants raise several further challenges to plaintiff's ADA claim. *First*, defendants move to dismiss the complaint under Rule 12(b)(6) for failure to plead the circumstances of the ADA violation with adequate specificity. The motion to dismiss for want of adequate particularity is unavailing; the pleadings adequately set forth the grounds for plaintiff's entitlement to relief. The Ninth Circuit has found the follow allegations to state an ADA claim: "[d]uring the course of his stay at the Hotel, Plaintiff encountered numerous other barriers to disabled access, including 'path of travel,' guestroom, bathroom, telephone, elevator, and signage barriers to access, all in violation of federal and state law and regulation[.] The facilities should be brought into compliance with all applicable code requirements." *Skaff v. Meridien North America Beverly Hills*, 506 F.3d 832, 840 (9th Cir. 2007). As explained, plaintiff here pleads far more factual detail. The motion to dismiss is denied.

*Second*, defendants move for a more definite statement under Rule 12(e). As defendants' own authority recognized,

> Rule 12(e) motions are disfavored and rarely granted. *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D.Cal.1998).

11

> The rule is aimed at unintelligibility rather than lack of detail and is only appropriate when the defendants cannot understand the substance of the claim asserted. *Beery v. Hitachi Home Elecs.*, Inc., 157 F.R.D. 477, 480 (C.D. Cal.1993). "If the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied." *Id*.

*Wilson v. PFS LLC*, WL 3841517, at *2 (S.D. Cal. 2006). Defendants argue that plaintiff should be required to provide a more definite statement because the complaint fails to plead when plaintiff visited the restaurants named in the complaint, thus depriving defendants of any statute-of-limitations defense (which must be pled in defendants' answer and affirmative defenses), and other similarly particularized facts. Insofar as defendants must respond to such matters in their responsive pleading, they may do so generally in order to preserve the defenses to the extent the facts ultimately support them. Such facts will be readily obtainable in discovery; for the purposes of defendants' motion on the pleadings, "the [c]omplaint is sufficiently detailed to allow Defendants to understand the claim against them." *Wilson*, WL 3841517, at *4.

*Finally*, defendants contend that the class claims should be dismissed or stricken because plaintiff's allegations fail to demonstrate commonality, typicality and adequacy. Defendants argue that the complaint fails to establish commonality because it purports to cover some 90 different restaurants, but those restaurants were built at different times, were of markedly different configuration and were operated by different franchisees. Similarly, defendants argue that plaintiff is an inadequate class representative or has atypical claims because he suffered a different legal injury than individuals who may have visited the 88 stores plaintiff has not visited. The two stores specifically identified in the complaint, defendants explain, were constructed well before 1993, the effective date of the ADA's new construction provision, and therefore plaintiff himself has no design or construction claim even.

Rule 12(f) motions to strike are disfavored and generally should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation. *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). Since we have not yet reached the Rule 23 stage, these arguments are premature. Indeed, defendants purport to raise a *facial* rather than factual challenge to jurisdiction limited to the adequacy of

12

the complaint, yet defendants would look beyond the pleadings for some purposes but not for other purposes. Defendants emphasize that plaintiff lacks standing and/or that any commonality pleadings must fail, among other reasons, because the two stores identified in the complaint were constructed in the 1970s (prior to the ADA new-construction provision). Similarly, at the hearing defendants emphasized that they have already provided the leases for the two stores named in the complaint (but only those two) and argued that the leases themselves demonstrate that the lessee, not Burger King, operated the stores and had responsibility for conformity with the ADA (Br. at 2–3). Defendants, however, would have this order ignore plaintiffs representation by declaration that it had visited leased stores other than those named in the complaint. As stated, plaintiff has *pled* common offending policies or design characteristics. Defendants offer no compelling reason why more should be required at the pleading stage and why the class claims should be stricken without affording plaintiff the opportunity to disprove defendant's factual claims.

If the facts ultimately reveal, for example, that plaintiff visited no store subject to the ADA's new construction provisions, the effect thereof for class certification will be considered at the appropriate time. It would be premature to determine at this stage whether, as a factual matter, those allegations are true and, if so, the scope of any properly certified class. Defendants motion to dismiss or strike the class claims is therefore denied.

### 3. JURISDICTION OVER STATE CLAIMS.

As stated, in addition to its ADA claim, the complaint asserts claims under California's Unruh Civil Rights Act and California's Disabled Persons Act. Cal. Civ. Code §§ 51, 54. Unruh provides that "All persons within the jurisdiction of this state are free and equal, and . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever," *id*. at § 51(b), and Section 52 provides a damages action for violations of thereof. Section 51(f), in turn, expressly renders an ADA violation a violation of Unruh: "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section."

13

California's Disabled Persons Act provides that "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public places." Cal. Civ. Code § 54(a). The statute creates a damages action for both intentional and unintentional violations thereof. *Id*. at 54.3(a); *Munson v. Del Taco, Inc.*, 522 F.3d 997, 1002 (9th Cir. 2008).

Plaintiff urges supplemental as well as diversity jurisdiction over those claims. Defendants contend that diversity jurisdiction fails under the Class Action Fairness Act, and that supplemental jurisdiction should be declined because the Ninth Circuit recently certified an issue potentially relevant to this case to the California Supreme Court.

The Judicial Improvements Act of 1990 provides that, with certain exceptions, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. 1367(a). Those exceptions include the following:

> The district courts *may* decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Id. at § 1367(c) (emphasis added).

In *Munson v. Del Taco*, 522 F.3d 997 (9th Cir. 2008), the Ninth Circuit certified the following questions to the California Supreme Court:

> 1. Must a plaintiff who seeks damages under California Civil Code section 52, claiming the denial of full and equal treatment on the basis of disability in violation of the Unruh Act, Cal. Civ. Code § 51, prove "intentional discrimination"?
>
> 2. If the answer to Question 1 is "yes," what does "intentional discrimination" mean in this context? For example, does intentional discrimination mean [providing examples].

14

*Id.* at 999. The decision further explained that "this case raises difficult questions of California law on which trial courts, both state and federal, are sharply divided." *Ibid.* In fact, a conflict had arisen between a prior Ninth Circuit interpretation of the state statute and a California Court of Appeals decision rejecting that interpretation. *See Oliver v. GMRI, Inc.*, 2007 WL 4144995, at *3 (S.D. Cal. 2007) (explaining the background). The California Supreme Court has accepted the matter for review but has yet to issue an opinion (Case No. S162818).

Here, the complaint's second count asserts precisely such a claim, *i.e.*, a violation of Unruh by reason of a violation of the ADA, in addition to a violation Section 51(b) on its own terms. As defendants emphasize, the only district court to be confronted with the question following *Munson* declined to exercise supplemental jurisdiction over similar state law claims, *Oliver v. KFC Corp.*, 2008 WL 2756605 (S.D. Cal. 2008), and prior to *Munson* various decisions declined to exercise supplemental jurisdiction over state disability-rights claims. *See, e.g.*, *GMRI*, 2007 WL 4144995, at *3 (collecting cases). The latter reasoned that the district court would be bound to follow the extant Ninth Circuit interpretation of the provision whereas a state court deciding the issue would be bound by a different rule. *Ibid*. *Oliver v. KFC*, for its part, reasoned as follows:

> As the Ninth Circuit has certified these questions to the California Supreme Court . . . the mere presence of the question in this case would not warrant, on its own, the Court's refusal of supplemental jurisdiction . . . . However, in combination with other factors, the Court exercises its discretion to decline supplemental jurisdiction here. Specifically, the Court dismissed *supra* the ADA claim, which provided the only basis for original jurisdiction. Furthermore, the state-law claims substantially predominate over the ADA claim. Because there is no triable question of fact concerning the unremedied conditions at KFC's restaurant, plaintiff cannot obtain injunctive relief, which is the only remedy available under the ADA. Plaintiff's entitlement to monetary damages (if any) arises exclusively under state law.

Id. at *7. Defendants argue that jurisdiction should not be exercised over the state claims under Unruh and CDPA, or at a minimum, that consideration of those claims should be stayed pending the California Supreme Court's resolution of the matter.

Unlike in *Oliver*, the ADA claims here will proceed, and the state claims do not clearly predominate over the federal claims. Moreover, plaintiff's claim under the California's

15

1  Disabled Persons Act may not be affected by the pending California Supreme Court ruling. If
2  need be, the Court can consider staying the state claims prior to ruling on any dispositive
3  motions, if the issue remains unsettled at that time and good cause is shown. The federal and
4  state claims, however, "form part of the same case or controversy," and the presence of the state
5  claims poses no immediate conflict. This order therefore finds the exercise of supplemental
6  jurisdiction over the state claims appropriate for now.[6]

7  Finally, defendants argue that the complaint fails to state a claim under Unruh or
8  California's Disabled Persons Act. Cal. Civ. Code §§ 51, 54. The basis for the attack is that
9  Unruh requires plaintiff to prove discriminatory intent and, defendants argue, the complaint
10 fails adequately to allege discriminatory intent. While the California Supreme Court is soon to
11 determine whether Unruh requires intentional discrimination, as stated California's Disabled
12 Persons Act does *not* necessarily require such intent. Moreover, plaintiff has alleged
13 discriminatory intent (Compl. ¶ 44). Although intent is pled generally, defendants offer no
14 authority suggesting that intent must be pled with particularity. Defendants motion to dismiss
15 the state claims for failure to state a claim is therefore denied.

16     **4.   DISCOVERY MOTIONS.**

17  As stated, defendant moves to stay discovery relating to restaurants plaintiff did not
18 allege to have visited until it is established whether or not plaintiff has standing to assert those
19 claims. Because this order answers the question in the affirmative, the discovery motion is
20 **DENIED** as moot.

21  Plaintiff moves to compel removal of defendants' designation of its list of the leased
22 stores as confidential. Plaintiff argues that all such information is publicly available and that
23 the confidential designation is a significant impediment to his ability to communicate with
24 potential class members and to the class members' ability to determine whether their claims
25 have been tolled by the filing of this litigation. Defendants respond that disclosure of the
26 addresses would cause them competitive injury because competitors regularly review court
27 filings to determine the locations of Burger King properties owned by third properties, in order

---

[6] Defendants' claim regarding diversity jurisdiction therefore need not be addressed.

16

to gain control of the properties and use the sites for their own brands. Removal of the confidential designation, defendants assert, would provide competitors with a roadmap of all such California properties. Finally, defendants assert, the protective order adequately permits plaintiff to share the lists with his attorneys, experts and potential plaintiffs so long as the recipients agree not to publicly disclose the information.

The motion to remove the confidential designation is granted. As defendant admits, public documents, including a publicly filed Memorandum of Lease, indicate whether a particular site is leased rather than owned; defendants therefore seek to protect not the underlying ownership information itself but rather only its compilation into a list of leased restaurants for use in this lawsuit. Defendants provide only isolated and anecdotal evidence that competitors are hunting for this information — but are unwilling to compile it from the public records. As plaintiff emphasizes, to a certain degree the claim contravenes common sense: when a lease terminates (or a property owner decides to sell), the owner/lessor has an economic interest in advertising the property broadly. Even accepting defendant's contention *arguendo*, the list will provide at most a partial roadmap to competitors because it includes both properties Burger King owns (and leases to third parties) and properties Burger King does not own but leases from third parties. Importantly, defendant has identified no feasible way plaintiff could timely notify all of the potential class members of this lawsuit with the confidential designation in place. For all of these reasons, plaintiff's motion is **GRANTED**.

## CONCLUSION

For all of the above-stated reasons, defendants' motion to dismiss and related motions are **DENIED**. Defendants' motion for a stay is also **DENIED**. Finally, plaintiff's motion to compel removal of the confidential designation is **GRANTED**. Discovery into the class claims should proceed immediately and should be completed by July 1, 2009.

\*      \*      \*

In essence, this combination of motions has been a maneuver to defeat class certification in advance by denying all class discovery and insisting that plaintiff prove up his Rule 23 motion within the four corners of the pleading. This is topsy-turvy. At the Rule 23 stage,

17

plaintiff may or may not succeed. Some obstacles potentially would bar certification or narrow a class to an injunction-only class. But plaintiff deserves a fair opportunity to examine the files of defendant to find the common architectural plans and other common-source documents that would be useful at the Rule 23 stage. This should not be decided as a matter of the pleadings.

**IT IS SO ORDERED.**

Dated: February 17, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE