GENOVESE JOBLOVE & BATTISTA, P.A.
MICHAEL D. JOBLOVE (admitted pro hac vice)
JONATHAN E. PERLMAN (admitted pro hac vice)
100 S.E. Second Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
mjoblove@gjb-law.com
jperlman@gjb-law.com

GLYNN & FINLEY, LLP
CLEMENT L. GLYNN, Bar No. 57117
ADAM FRIEDENBERG, Bar No. 205778
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596
Telephone: (925) 210-2800
Facsimile: (925) 945-1975
cglynn@glynnfinley.com
afriedenberg@glynnfinley.com
mrodgers@glynnfinley.com

*Attorneys for Defendant Burger King Corporation*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL CASTANEDA, on behalf of himself and others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>BURGER KING CORPORATION and BURGER KING HOLDINGS, INC.,<br><br>        Defendants. | Case No. C 08-04262 WHA (JL)<br><br>**DEFENDANT BURGER KING CORPORATION'S OPENING SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SURVEY AND REMEDIATION INFORMATION, AND IN SUPPORT OF BKC'S MOTION TO COMPEL RETURN OF INADVERTENTLY PRODUCED PRIVILEGED DOCUMENTS AND FOR PROTECTIVE ORDER** |

i

Case No. C 08-04262 WHA (JL)

BKC's Opening Supp. Brief re: Privileged Surveys

# **TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………… 1

FACTUAL BACKGROUND……………………………………………... 2

1.  Plaintiffs' Surveys……………………………………………… 2

2.  The BKC Surveys……………………………………………… 3

3.  The Applicable Discovery Requests……………………………… 5

    a.  Discovery Requests between Plaintiffs and BKC……………… 5

    b.  Subpoenas Served on BKC Franchisees………………………… 7

    c.  Plaintiffs' Most Recent Interrogatories……………………… 7

    d.  Plaintiffs' Subsequent Production of Surveys……………… 8

ARGUMENT………………………………………………………….. 8

A.  The Documents Indisputably Are Protected by the Work
    Product Doctrine……………………………………………… 8

B.  Plaintiffs' Contention That the Documents at Issue Are Not Entitled
    to Protection Because They Reference Factual Information Is Meritless… 10

C.  Plaintiffs' Contention That BKC Has Waived the Work Product Privilege
    by Providing an Insufficient Privilege Log Is Meritless………………… 13

D.  BKC Has Not Waived Its Attorney-Client and Work Product Privileges
    by Sharing the Documents at Issue with Parties with Whom It Has
    Common Interests and a Joint Defense Agreement……………………… 15

E.  Plaintiffs Fail to Meet Their Burden of Showing the Substantial Need
    and Undue Hardship for Obtaining Privileged Information……………… 16

F.  Plaintiffs Should be Required to Return an Inadvertently Produced
    Privileged Document, and to Refrain from Relying on It in any Way…… 19

G.  Plaintiffs' Improper Attempt to "Approve" Interrogatory No. 24 Fails
    Procedurally and Substantively……………………………………… 20

    a.  Plaintiffs' Request to "Approve" Interrogatory No. 24 Violates
        Federal and Local Discovery Rules……………………………… 20

    b.  Plaintiffs' Interrogatory No. 24 Is Unreasonably Cumulative
        and Would Be Grossly Burdensome……………………………… 22

CONCLUSION……………………………………………………… 23

i

Case No. C 08-04262 WHA (JL)

BKC's Opening Supp. Brief re: Privileged Surveys

**Cases**

*Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros.*
      *& Barnum & Bailey Circus,*
      233 F.R.D. 209 (D.D.C. 2006)………………………………… 13

*AMCO Ins. Co. v. Madera Quality Nut LLC,*
      2006 WL 931437 (E.D. Cal. Apr. 11, 2006)…………………… 9,14,19

*Aronson v. McKesson HBOC, Inc.,*
      2005 WL 934331 (N.D. Cal. Mar. 31, 2005)…………………… 15

*ASARCO, LLC v. Americas Mining Corp.,*
      2007 WL 3504774 (D. Idaho Nov. 15, 2007)………………… 15

*AT&T Corp. v. Microsoft Corp.,*
      2003 WL 21212614 (N.D. Cal. Apr. 18, 2003)………………… 17

*Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.,*
      2008 WL 5214330 (N.D. Cal. Dec. 12, 2008)………………… 14

*Capacchione v. Charlotte-Mecklenburg Schs.,*
      182 F.R.D. 486, 492 (W.D.N.C. 1998)………………………… 21

*Chiquita Int'l Ltd. v. M/V Bolero Reefer,*
      1994 WL 263603 (S.D.N.Y. June 7, 1994)…………………… 18

*Cohen v. City of N.Y.,*
      255 F.R.D. 110 (S.D.N.Y. 2008)……………………………… 18

*Equal Rights Ctr. v. Post Props., Inc.,*
      247 F.R.D. 208 (D.D.C. 2008)………………………………… 10,11,14,19

*Ford Motor Co. v. Edgewood Props., Inc.,*
      2009 WL 1416223 (D.N.J. May 19, 2009)…………………… 16

*Garcia v. City of El Centro,*
      214 F.R.D. 587 (S.D. Cal. 2003)……………………………… 12,13,17

BKC's Opening Supp. Brief re: Privileged Surveys

*Gen. Elec. Co. v. Johnson*,

     2006 WL 2616187(D.D.C. Sept. 12, 2006)……………………………… 10

*In re Grand Jury Subpoena (Torf)*,

     357 F.3d 900 (9th Cir. 2004)……………………………………………… 9

*Hickman v. Taylor*,

     329 U.S. 495 (1947)……………………………………………………… 11-12,17

*Holmgren v. State Farm Mut. Auto. Ins. Co.*,

     976 F.2d 573 (9th Cir. 1992)……………………………………………… 19

*Humphreys v. Regents of the Univ. of Cal.*,

     2006 WL 1409336 (N.D. Cal. May 23, 2006)………………………… 13

*Informatica Corp. v. Bus. Objects Data Integration, Inc.*,

     454 F. Supp. 2d 957 (N.D. Cal. 2006)………………………………… 11

*Jacobs v. Scribner*,

     2008 WL 2773999 (E.D. Cal. June 27, 2008)………………………… 21

*Martin v. Bally's Park Place Hotel & Casino*,

     983 F.2d 1252 (3d Cir. 1993)…………………………………………….. 10-11,17

*Martin v. Monfort, Inc.*,

     150 F.R.D. 172 (D. Colo. 1993)………………………………………… 17

*Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.*,

     143 F.R.D. 601, 608 (M.D.N.C. 1992)………………………………… 18

*McNeal v. Evert*,

     2009 WL 728505 (E.D. Cal. Mar. 19, 2009)………………………….. 21

*Millenium Holding Group, Inc. v. Sutura, Inc.*,

     2007 WL 121567 (D. Nev. Jan. 11, 2007)…………………………… 13-14

*Pub. Serv. Co. of NH v. Portland Natural Gas*,

     218 F.R.D. 361 (D.N.H. 2003)………………………………………… 14

*Ring Indus. Group, LP v. E Z Set Tank Co.*,

     2008 WL 3501068 (W.D.N.C. Aug. 11, 2008) ……………………… 20

Case No. C 08-04262 WHA (JL)

BKC's Opening Supp. Brief re: Privileged Surveys

*S.E.C. v. Schroeder*,

    2009 WL 1125579 (N.D. Cal. Apr. 27, 2009) ………………………… 9

*Seal v. Univ. of Pittsburgh*,

    135 F.R.D. 113 (W.D. Pa. 1990) ……………………………………… 10

*Stillmunkes v. Givaudan Flavors Corp.*,

    2009 WL 936605 (N.D. Iowa Apr. 7, 2009) ………………………… 19-20

*Tax Analysts v. I.R.S.*,

    117 F.3d 607 (D.C.C. 1997) ……………………………………….. 10

*U.S. v. British Am. Tobacco (Invs.) Ltd.*,

    387 F.3d 884 (D.C.C. 2004) ………………………………………… 13,14

*U.S. v. Int'l Longshoremen's Ass'n*,

    2006 WL 2014093 (E.D.N.Y. July 18, 2006) ………………………… 16

*U.S. v. Nobles*,

    422 U.S. 225 (1975) ………………………………………………… 10

*U.S. v. Stepney*,

    246 F. Supp. 2d 1069 (N.D. Cal. 2003) ……………………………… 16

*Warren Distrib. Co. v. InBev USA L.L.C.*,

    2008 WL 4371763 (D.N.J. Sept. 18, 2008) ………………………… 16

*Waterbury v. Scribner*,

    2008 WL 2018432 (E.D. Cal. May 8, 2008) …………………………… 21,22

*Zoller v. Conoco, Inc.*,

    137 F.R.D. 9 (W.D. La. 1991) ………………………………………… 18,19

**<u>Rules</u>**

Fed. R. Civ. P. 26(b)(2) …………………………………………… 21,22

Fed. R. Civ. P. 26(b)(3) …………………………………………… 9,10,17

Fed. R. Civ. P. 26(b)(3)(A)………………………………………… 15

Fed. R. Civ. P. 26(b)(4)(B) ……………………………………… 11

Fed. R. Civ. P. 26(b)(5)(A) ……………………………………… 13

Fed. R. Civ. P. 26(b)(5)(B) …………………………………………… 19,20

Fed. R. Civ. P. 26 advisory committee's notes (1970) ………………………… 12

Fed. R. Civ. P. 33(a)(1) …………………………………………… 8,20,21

Fed. R. Civ. P. 34(b)(2) …………………………………………… 17

BKC's Opening Supp. Brief re: Privileged Surveys

Case No. C 08-04262 WHA (JL)

1   Pursuant to the Court's Amended Order dated July 9, 2009 (Docket No. 117), Defendant

2   Burger King Corporation ("BKC") respectfully submits its opening supplemental brief: (i) in

3   opposition to Plaintiffs' motion to compel production of surveys and related documents that

4   clearly are protected work product, as they were jointly prepared by BKC's non-testifying

5   accessibility experts and BKC's outside counsel in anticipation of this litigation; (ii) in support of

6   BKC's motion to compel Plaintiffs' counsel to return any such documents that were

7   inadvertently produced and for a protective order; and (iii) in opposition to Plaintiffs' alternative

8   request, not properly before the Court, to compel BKC to answer thousands of interrogatory

9   questions regarding the privileged information contained in such documents.   In support of its

10  position, BKC previously submitted the declarations of Joseph N. Rubin ("J. Rubin Decl.")

11  (Docket No. 111) and Stanley R. Rubin, Esq. (Docket No. 112), and files simultaneously

12  herewith the declaration of Jonathan E. Perlman, Esq. ("Perlman Decl.").

13                              **Introduction**

14      The issues in dispute relate to investigatory and litigation strategy documents created by

15  the non-testifying consultants and outside counsel that BKC and its in-house counsel retained in

16  anticipation of this litigation.

17      On June 24, 2009, the parties filed a Joint Statement of Issues Re: Plaintiffs' Motion to

18  Compel Survey and Remediation Information, and Defendant's Motion to Compel Return of

19  Inadvertently Produced Privileged Documents and for Protective Order (Docket No. 103)

20  (hereinafter, the "Joint Statement").   Plaintiffs seek an order compelling disclosure of the

21  documents, or, alternatively, responses to an interrogatory seeking the information contained in

22  the documents, while BKC seeks both a protective order precluding such disclosure, and an order

23  compelling the return of a privileged work summary and other documents inadvertently

24  produced by a Burger King franchisee with whom BKC has a joint defense agreement.  *See*

25  *generally* Joint Statement at 2-4 (Plaintiffs' Position) and 4-7 (Defendant's Position).  This

26  Court's Amended Order of July 7, 2009 (Docket No. 117) permitted supplemental briefing in the

27  matter.  As set forth below, Plaintiffs are not entitled to production of either the documents or the

28  information contained in them, as a matter of law.

BKC's Opening Supp. Brief re: Privileged Surveys

First, it is beyond dispute that the materials at issue constitute litigation investigatory and strategy documents prepared for this litigation. As such, the materials are protected work product. Plaintiffs' contention that the work product doctrine does not protect the litigation documents at issue, because they reference factual information, likewise is contrary to settled law.

Second, Plaintiffs' contention that BKC has waived all privileges, because its privilege log is insufficiently detailed, is similarly unavailing. To the contrary, BKC's privilege log contains sufficient information to constitute a good faith effort at compliance, and Plaintiffs' request for the unnecessarily harsh sanction of waiver is not warranted. Plaintiffs' related contention that BKC has waived any privilege by sharing documents regarding specific restaurants with the franchisee owners of those restaurants, with whom BKC has a joint defense agreement, borders on being frivolous.

Finally, Plaintiffs' contention that the Court should provide them with BKC's work product, based on an alleged "substantial" need for the information, is erroneous given that they have been investigating the present claims since at least 2006, and have had ample opportunity to take – and, in some cases, have taken – their own measurements of the restaurants. Plaintiffs do not even come close to satisfying the heavy burden for such rarely granted relief.

Accordingly, BKC respectfully requests that the Court deny Plaintiffs' request for production of protected work product, and compel the return of any inadvertently produced privileged documents.

**<u>Factual Background</u>**

**1.      Plaintiffs' Surveys**

Plaintiffs' Amended Complaint (Docket No. 72) contends that Burger King® restaurants in California are not adequately accessible to the disabled. Plaintiffs' claims relate only to those California restaurants that are independently maintained and operated by franchisees, but for

BKC's Opening Supp. Brief re: Privileged Surveys

which BKC is the landlord (the so-called "BKLs").  (*See id.* ¶ 1).[1]  According to documents produced by Plaintiffs, Plaintiffs' counsel initiated an investigation of these restaurants for possible accessibility violations at least as early as 2006, and perhaps earlier.  That investigation included surveys of a number of California restaurants, consisting of detailed written reports of observations, photographs, and measurements allegedly taken at various restaurants, including the width of access aisles, the dimensions of queue lines, the heights of counters, the weight of doors, the distances from toilets to stalls, the total number of fixed seats, the total number of accessible seats, the slopes of sidewalks, and so forth.  (*See, e.g.*, Perlman Decl., ¶ 4 and Ex. A, containing a representative sample of Plaintiffs' counsels' "Burger King Survey Forms," including P007305, dated May 31, 2006, and P007288-P007293, each bearing a fax line dated June 2, 2006).[2]  The surveyors who conducted these investigations on behalf of Plaintiffs' counsel were trained and received "training materials."  (Perlman Decl., Ex. A at P007305).  Plaintiffs' counsel inexplicably ceased taking their own surveys in August of 2008.[3]

### 2.  The BKC Surveys

On January 16, 2008, Plaintiffs' counsel transmitted to BKC via email a letter threatening litigation regarding the California restaurants.  (Perlman Decl., ¶ 3).  Plaintiffs' counsel stated that they had already "conduct[ed] an extensive investigation" of the restaurants.  (*Id.*)  Plaintiffs contend that -- as landlords -- BKC is liable for any disability barriers at the restaurants maintained and operated by independent franchises.  (*See, e.g.,* Docket No. 72, ¶¶ 1, 14).

---

[1] This limitation is based on Section 12182(a) of the Americans With Disabilities Act (the "ADA"), which permits private actions thereunder to be asserted only against owners, operators and lessors or lessees.  Since BKC does not operate any restaurants in California, it could be sued under the ADA only as to those restaurants for which it has a lease.  (*See* Docket No. 73, ¶¶ 1, 14).

[2] As discussed *infra*, Plaintiffs' counsel initially correctly claimed that Plaintiffs' surveys were protected work product.  However, on July 10, 2009, as the briefing deadline on this issue approached, Plaintiffs produced their surveys, after apparently making a strategic decision that their argument regarding BKC's surveys would appear duplicitous were they to continue to contend that Plaintiffs' surveys were protected work product, while BKC's were not.

[3] Although a number of the surveys that Plaintiffs produced were not dated, the last dated surveys are dated August 28, 2008, shortly before the Complaint was filed.  (Perlman Dec., Ex. A at P007368-P007371).

Case No. C 08-04262 WHA (JL)

BKC's Opening Supp. Brief re: Privileged Surveys

In anticipation of the threatened litigation, BKC authorized its outside legal counsel (the firm of Genovese Joblove & Battista, P.A. ("GJB")) to retain Universal Design & Consultants ("UDC") – a nationally recognized consultant that has provided litigation consulting services to plaintiffs and defendants alike in numerous accessibility class and individual actions. (Perlman Decl., ¶ 5). GJB retained UDC for the purposes of assisting in the preparation of a legal defense for this litigation and to develop a comprehensive litigation strategy for use in this and other lawsuits. (*Id.*). Additional accessibility consultants with a presence in California were subsequently retained to assist UDC, BKC, and BKC's counsel in developing and implementing its litigation strategy. (Perlman Decl., ¶ 6). These include the firms of Jones Lang LaSalle, and Rothenberg Sawasy Architects. (*Id.*) BKC has not designated any of these consultants, including UDC, as testifying experts, and does not intend to do so. (*Id.*).

These consultants' duties included developing and conducting surveys of the California restaurants, investigating properties for all types of accessibility issues, providing ADA consulting services, and other investigative tasks. (Perlman Decl., ¶ 7). Toward those ends, the consultants prepared analyses of the restaurants that address not only Plaintiffs' mobility-related allegations but also other accessibility issues. These analyses consider the enhancement of accessibility -- whether or not currently required by applicable law -- and reveal the mental impressions and recommendations of both the consultants and BKC's counsel. (*Id.*). In connection with these analyses, the consultants, in conjunction with BKC's counsel, developed survey formats that incorporate numerous possible ways that a court might interpret and apply federal and state accessibility guidelines under various disability scenarios. (Perlman Decl., ¶ 8).

The consultants also prepared for each of the California restaurants a "scope of work summary." (Perlman Decl., ¶ 9). Because the law in this context requires a highly individualized inquiry into the feasibility and design characteristics of each particular restaurant, these work summaries do not simply reflect the minimum accessibility standards necessary for each restaurant to comply with applicable law, but instead reflect the joint recommendations of the consultants and BKC's counsel as to accessibility enhancements recommended for each particular restaurant. (*Id.*).

4

BKC's Opening Supp. Brief re: Privileged Surveys

Case No. C 08-04262 WHA (JL)

The work summary for each particular restaurant was, together with other documents, disclosed to the franchisee for the particular restaurant, in order to further identify common interests, joint defenses, and shared strategies between BKC and the franchisees. (Perlman Decl., ¶ 10). Each franchisee received only the scope of work summary for its own restaurant(s). (Perlman Decl., ¶ 11). The franchisees were not given copies of the consultants' survey results. (*Id.*).

Prior to sharing with the franchisees any consultant-generated information, including the work summaries, BKC entered into joint defense agreements with its California franchisees. (Perlman Decl., ¶ 12). These joint defense agreements contain the standard provisions necessary to ensure that work product and attorney-client privileges are preserved. (*Id.*). Pursuant to these joint defense agreements, BKC provided to each franchisee a separate work summary. (*Id.*).

The work summaries indicate on every page that they are "Privileged & Confidential" and "Attorney Work Product." (*Id.*). BKC, through its in-house counsel, consultants, and outside counsel, asked that franchisees make the accessibility enhancements discussed in their scopes of work, and invited input on possible alternative strategies. (Perlman Decl., ¶ 13).

### 3. The Applicable Discovery Requests

#### a. Discovery Requests between Plaintiffs and BKC

Sometime after BKC hired UDC, pre-suit negotiations between Plaintiffs and BKC broke down. (Perlman Decl., ¶ 14). Plaintiffs subsequently filed this action on September 10, 2008. (Docket No. 1).

Plaintiffs' initial discovery requests expressly asked BKC to identify and produce all surveys or assessments of any of the BKLs for compliance with accessibility laws. (Perlman Decl., Ex. B: Plaintiffs' First Set of Discovery to Defendants, dated November 13, 2008, Interrog. No. 23 & Doc. Req. No. 6). Accordingly, BKC's initial discovery requests to Plaintiffs likewise asked Plaintiffs to produce the surveys that they previously had taken of the California

BKC's Opening Supp. Brief re: Privileged Surveys

restaurants.  (*See* Perlman Decl., Ex. C: Defendant [BKC]'s First Set of Discovery Requests to Plaintiffs, dated January 6, 2009, Interrog. No. 9 & Prod. Req. No. 4).[4]

BKC subsequently responded to Plaintiffs' initial requests, agreeing to produce all non-privileged accessibility surveys of the BKLs, including Facility Inspection Reports ("FIRs") prepared by its own personnel,[5] but objecting to production of any surveys or other information protected by attorney-client privilege or protected by the work product doctrine.  (Perlman Decl., Ex. D: Defendant [BKC]'s Responses to Plaintiffs' First Set of Discovery, dated January 14, 2009, Responses to Interrog. No. 23 & Doc. Req. No. 4; Perlman Decl., Ex. E: Defendant [BKC]'s Supplemental Responses to Plaintiffs' First Set of Discovery to Defendants, dated April 29, 2009, Responses to Interrog. No. 23 & Doc. Req. No. 4).

Plaintiffs' subsequent response to BKC's discovery requests objected to producing the surveys that Plaintiffs' counsel had been collecting for the prior two years, or longer, on the grounds that their surveys were protected by the work product doctrine and attorney-client privilege.  (*See* Perlman Decl., Ex. F: Plaintiffs' Responses to Defendant [BKC]'s First Set of Discovery Requests to Plaintiff, dated March 6, 2009, Responses to Interrog. No. 9 & Prod. Req. No. 4).  Plaintiffs' initial privilege log, also dated March 6, 2009, claimed work product protection for surveys "[p]repared by paralegals working for Plaintiff's attorneys," the subject matter of which was described as "[m]easurements taken by paralegals at Burger King restaurants."  (Perlman Decl., Ex. G at p. 2).  After consideration of the issue, BKC accepted Plaintiffs' objection and opted not to pursue production of the surveys.  (Perlman Decl., ¶ 21).  Accordingly, BKC's privilege log, produced April 24, 2009, expressly included "[a]ll surveys of restaurants made as a result of Plaintiff's initial demand and subsequent litigation in preparation of BKC's litigation strategy" that were prepared by BKC's ADA consultants, as well as

---

[4] BKC was aware of the surveys of Plaintiffs' counsel because they had produced selected surveys to BKC's counsel pursuant to a confidentiality agreement during pre-suit negotiations. (Perlman Decl., ¶ 4).  The confidentiality agreement no longer applies to these surveys, given Plaintiffs' subsequent production of them, discussed below.

[5] FIRs required the franchisees to obtain, and provide to BKC, ADA compliance certificates from independent architects or engineers; these also were produced to Plaintiffs.  (*See* Perlman Decl., Ex. E).

6

1    "[c]ommunications between BKC, Counsel and Consultants regarding litigation strategy."

2    (Perlman Decl., Ex. H: BKC PP 000463).[6]

3              **b.      Subpoenas Served on BKC Franchisees**

4              During the month of April 2009, Plaintiffs served subpoenas on the BKC franchisees that

5    maintain and operate the restaurants at issue in this case.  In response, one franchisee, Centennial

6    Restaurants, LLC ("Centennial"), inadvertently produced, among other documents, a scope of

7    work summary prepared by BKC's consulting experts.  (Perlman Decl., ¶ 23).  BKC first became

8    aware of this inadvertent production on or about May 28, 2009, when Plaintiffs' counsel

9    produced to BKC copies of the documents produced to Plaintiffs by Centennial on April 28,

10   2009, in response to Plaintiffs' subpoena.  (*Id.*).  Both Centennial's principal, Joseph N. Rubin,

11   and his attorney Stanley R. Rubin, Esq., have filed declarations indicating that the production

12   was inadvertent.  (Docket Nos. 111, 112).  BKC requested, and the Rubins subsequently

13   demanded, return of the documents.  (Perlman Decl., ¶ 23).  Plaintiffs have refused, although

14   they have agreed to sequester the documents pending a ruling from this Court on the issue.  (*Id.*).

15             **c.      Plaintiffs' Most Recent Interrogatories**

16             On May 27, 2009, the day before producing the Centennial documents to BKC, Plaintiffs

17   served a "Second Set of Discovery" on BKC, clearly utilizing the information gleaned from

18   Centennial's inadvertently produced document.  (*See* Perlman Decl., Ex. I).[7]  Plaintiffs' Second

19   Set of Discovery also included a request designated as Interrogatory No. 24, which not only

20   utilized information from the inadvertently produced Centennial documents, but also included 19

21   separate subparts seeking the specific dimensions of nearly every feature of each of the

22   approximately 92 BKL restaurants in California, including, for example, the "width, slope and

23   cross slope of all accessible routes, including sidewalks, ramps or curb ramps" (*id.,* subpart a)

24   ───────────────────

25   [6] Plaintiffs' counsel was aware that BKC had hired UDC as a consultant, and attempted to obtain
26   copies of the surveys and related documents by serving a subpoena on UDC, which asserted
     work product protection as to the work it had done on behalf of BKC since being engaged in
27   anticipation of this litigation.  (Perlman Dec., ¶ 27).
     [7] The cover letter from Plaintiffs' counsel transmitting Plaintiffs' Second Set of Discovery
28   expressly referred to the documents produced by Centennial.  (Perlman Decl., ¶ 25).

BKC's Opening Supp. Brief re: Privileged Surveys

and "clear floor space at lavatory, height of counter, dimensions of knee clearance, and distance from centerline of lavatory to nearest wall" (*id.,* subpart n).

Given the detailed and individualized nature of each separate subpart of Interrogatory No. 24, it actually comprises thousands of separate interrogatory requests, in gross violation of the 25-interrogatory limit in Rule 33(a)(1) of the Federal Rules of Civil Procedure.[8]  Moreover, the interrogatories are designed to obtain precisely the information contained within the documents created by BKC's consultants in the course of their analyses of the BKLs, which both reveal the mental impressions of the consultants and counsel, and on which BKC's litigation strategy is based.

### d.   Plaintiffs' Subsequent Production of Surveys

On July 10, 2009, ten days after the close of class discovery, and with this Court's July 15 briefing deadline only 5 days away, Plaintiffs produced to BKC copies of Plaintiffs' pre-litigation surveys, in a clear attempt to better their claim that they are entitled to BKC's litigation surveys.  (Perlman Decl., ¶ 4).  Clearly, Plaintiffs have recognized the duplicity of their actions and how their inconsistent positions as to whether surveys are protected would be viewed by this Court.  Nevertheless, Plaintiffs' previous position – that their surveys, like BKC's, are protected – was correct.  Moreover, Plaintiffs' election to waive the privilege as to their own surveys does not – and cannot – remove the protection afforded to the work product of BKC's non-testifying consultants under Federal Rule of Civil Procedure 26(b)(4).

## ARGUMENT

### A.   The Documents Indisputably Are Protected by the Work Product Doctrine

Plaintiffs, in a passing reference without any explanation, state that they "contest" that the documents at issue are covered by the work product doctrine.  (Joint Statement at 2).[9]  "The

---

[8] Expressly recognizing this fact, Plaintiffs' counsel's cover letter transmitting the Interrogatory requested that BKC stipulate, pursuant to Rule 33(a)(1),  that Plaintiffs were permitted to serve it.  (Perlman Decl., ¶ 26).  BKC declined.  (*Id.*).  As discussed below, Plaintiffs have never expressly sought Court permission to exceed the numerical limit on interrogatories.

[9]      Because the parties are submitting their respective opening briefs simultaneously, BKC assumes that Plaintiffs are relying upon the arguments and authority they cite in the Joint

Case No. C 08-04262 WHA (JL)

BKC's Opening Supp. Brief re: Privileged Surveys

work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3), protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.'" *In re Grand Jury Subpoena (Torf)*, 357 F.3d 900, 906 (9th Cir. 2004) (citation omitted). *See also S.E.C. v. Schroeder*, No. C07-03798, 2009 WL 1125579, at \*6 (N.D. Cal. Apr. 27, 2009); *AMCO Ins. Co. v. Madera Quality Nut LLC*, No. 1:04-cv-06456, 2006 WL 931437, at \*\*14-15 (E.D. Cal. Apr. 11, 2006).

Documents qualify for protection under Rule 26(b)(3) so long as the documents are prepared (1) in anticipation of litigation or for trial (2) by or on behalf of a party. *Torf*, 357 F.3d at 907 (citation omitted); *AMCO*, 2006 WL 931437, at \*\*14-15 (citation omitted). The documents at issue easily satisfy these prerequisites.

The Ninth Circuit's *Torf* decision, 357 F.3d at 900, is instructive. There, the Environmental Protection Agency informed a paint manufacturer that it was under investigation for possible violation of federal waste management laws. The paint manufacturer hired counsel, who hired an environmental consultant to aid the manufacturer and its counsel in preparing a legal defense. The investigator's "duties included interviewing witnesses, sampling and testing paint products, investigating properties that might include hazardous waste, and other investigative tasks." *Id.* at 905. The court ultimately held that the consultants' reports and other documents were "single purpose" documents that "clearly" passed the test for work product protection under Rule 26(b)(3). *Id.* at 907.

Similarly, in the case at bar, GJB, as BKC's counsel, retained UDC for the purpose of assisting the firm in investigating, determining, and preparing BKC's legal defenses and strategies. (Perlman Decl. ¶ 5). The documents in dispute were prepared under the direction of both UDC and BKC's counsel. (Perlman Decl. ¶ 8.) Accordingly, the documents at issue "clearly" pass the two-part test for work product protection under Rule 26(b)(c). *Torf*, 357 F.3d at 907. *See also AMCO*, 2006 WL 931437, at \*\*14-15 (documents created during insurance

---

Statement. BKC will respond in its opposition brief to any legal and factual issues that Plaintiffs might raise for the first time in their opening brief.

BKC's Opening Supp. Brief re: Privileged Surveys

fraud investigation were created in anticipation of litigation and were subject to work product

privilege, even when no litigation had commenced).

**B.** **Plaintiffs' Contention That the Documents at Issue Are Not Entitled to Protection Because They Reference Factual Information Is Meritless**

Plaintiffs argue that, even if the documents at issue are privileged, the factual information

contained within them is not. This argument is contrary to settled law.

"The reach of the work product privilege is broad; 'even factual portions of documents

may be withheld, so long as the document as a whole was created in anticipation of litigation.'"

*Equal Rights Ctr. v. Post Props., Inc.*, 247 F.R.D. 208, 211 (D.D.C. 2008 ) (quoting *Gen. Elec.*

*Co. v. Johnson*, No. CIV.A.00-2855 (JDB), 2006 WL 2616187, at *12 (D.D.C. Sept. 12, 2006))

(citing also *Tax Analysts v. I.R.S.*, 117 F.3d 607, 621 (D.C.C. 1997) (holding that "[a]ny part of a

[document] prepared in anticipation of litigation, not just the portions concerning opinions, legal

theories, and the like, is protected by the work product doctrine")). *See also Martin v. Bally's*

*Park Place Hotel & Casino*, 983 F.2d 1252, 1261-62 (3d Cir. 1993) (rejecting, as overbroad,

"argu[ment] that the work product doctrine should not apply to [consultant's] report because it

contained purely factual material.") (citing *U.S. v. Nobles*, 422 U.S. 225, 238-39 (1975), and

other authority).

Specifically, "the privilege encompasses any factual material contained in [] compliance

reviews, as well as any photographs, measurements, and other evidence that were taken during

those reviews." *Equal Rights*, 247 F.R.D. at 211 (citing Fed. R. Civ. P. 26(b)(3)). The

compliance reviews at issue in *Equal Rights* were, as here, ADA compliance reviews prepared

by the withholding party's ADA accessibility experts and other consultants in anticipation of

potential ADA litigation. *Id. See also Martin*, 983 F.2d at 1254 (regarding consultants' report of

toxic emissions from hotel's dishwasher prepared in anticipation of potential litigation brought

by affected hotel employees, OSHA, and other parties).

Significantly, "the protection of work product arising from the case of [*Hickman*], has

been supplanted by Rule 26(b)(3) . . . ." *Seal v. Univ. of Pittsburgh*, 135 F.R.D. 113, 114 (W.D.

Pa. 1990). Rule 26(b)(3) expressly "encompasses factual materials." *Martin*, 983 F.2d at

10

Case No. C 08-04262 WHA (JL)

BKC's Opening Supp. Brief re: Privileged Surveys

1261.[10] Likewise, Rule 26(b)(4)(B) bars parties from obtaining discovery of "*facts* known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(B) (emphasis added) (noting an exception to this rule upon a showing of "exceptional circumstances"). Here, UDC is an expert that BKC retained and specially employed in anticipation of the instant litigation and is not expected to be called as a witness at trial, *i.e.*, UDC is a non-testifying expert. (Perlman Decl. ¶ 6.) Thus, under Rule 26(b)(4)(B), UDC's investigation documents, including its surveys, are not discoverable.

Plaintiffs' cases, which do not relate to ADA compliance reviews (as in *Equal Rights*), much less to consultants' reports (as in *Martin*), miss the point. For example, Plaintiffs cite *Hickman v. Taylor*, 329 U.S. 495, 508 (1947), for the general discovery rule that the work product privilege does not protect facts gathered by an attorney in preparing his or her case. In truth, *Hickman* actually supports BKC's objections to production.

In *Hickman*, a tugboat sank in the Delaware River, killing five of nine crew members, including the plaintiff's decedent. 329 U.S. at 498. Shortly thereafter, the defendants (the tug owners and their underwriters) retained a law firm to defend against potential litigation and to bring their own claims. *Id.* "[W]ith an eye toward the anticipated litigation," a member of the law firm privately interviewed the survivors of the accident and other witnesses, and prepared signed statements and memoranda of the interviews. *Id.* The plaintiff sought to compel production of the statements and memoranda, to which request the defendants objected on the

---

[10] Plaintiffs' reliance on *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 454 F. Supp. 2d 957 (N.D. Cal. 2006), is unclear. In *Informatica*, the issue before this Court was the scope of the waiver of privilege by a party in a patent infringement action who asserted an advice-of-counsel defense. 454 F. Supp. 2d at 962 (noting, at 963, that "[q]uestions of privilege and discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law"). To the extent that Plaintiffs rely on *Informatica* for their argument that factual information contained in the withheld surveys and documents somehow are not "documents and tangible things" under Rule 26(b)(3), the opinion contains no such citation. Regardless, under the circumstances, Plaintiffs' argument is directly contrary to law. *See Martin*, 983 F.2d at 1261 ("Th[e] definition [of Rule 26(b)(3)] encompasses factual materials.").

BKC's Opening Supp. Brief re: Privileged Surveys

Case No. C 08-04262 WHA (JL)

basis of work product.  *Id.*  The Supreme Court agreed with the defendant, and concluded that, "[i]f there should be a rare situation justifying production of these matters, [the plaintiffs'] case is not of that type."  *Id.* at 513 (noting, at 508, that the witnesses' identity was "well known" and their availability to the plaintiff appeared "unimpaired").

Here too, the restaurants' identity was well known to Plaintiffs, who, both prior to and after the filing of this action, have had unimpaired access to the restaurants to conduct their own independent investigation and surveys.  Instead of doing so, Plaintiffs seek to secure the production of privileged facts and mental impressions provided in anticipation of the action by BKC's non-testifying experts.  The U.S. Supreme Court in *Hickman* stated that no "rule dealing with discovery contemplates production under such circumstances."  *Id.* at 509 (stating also that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.").  *See also* Fed. R. Civ. P. 26 advisory committee's notes (1970) ("The courts have steadfastly safeguarded against disclosure of . . . subjective evaluations of [an attorney's] investigators . . . .").

Plaintiffs' reliance on *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003), is equally misplaced.  Plaintiffs cite *Garcia* for the proposition that the work product doctrine does not protect facts contained within protected documents.  In *Garcia*, the plaintiff (a high school student) brought an excessive force action against the city and two police officers who allegedly tackled and injured the plaintiff after a disturbance in the high school's parking lot.  *Id.* at 589.  The plaintiff requested production of the interviews conducted by the city's insurance claims adjuster of the witnesses to the underlying incident, including the two officers and their sergeant, to which request the defendants objected under the attorney-client and work product privileges.  *Id.*

With respect to the officers' statements, the court found that, because the claims adjuster was acting in the ordinary course of business **and not in anticipation of litigation**, the factual portions of those statements were discoverable.  *Id.* at 593-94.  Significantly, however, with respect to the remaining witness statements, the court found that, because the statements were taken in anticipation of litigation, they were not discoverable.  *Id.* at 594-95.

BKC's Opening Supp. Brief re: Privileged Surveys

*Garcia* in fact supports BKC's arguments in the matter, not those of Plaintiffs.  Indeed, because the investigation documents and surveys at issue (including the factual portions therein) were prepared in anticipation of litigation and reveal the mental impressions of BKC's counsel and non-testifying accessibility experts, (*see* Perlman Decl. ¶ 7), the documents (and facts therein) are privileged.

**C.**     **Plaintiffs' Contention That BKC Has Waived the Work Product Privilege by Providing an Insufficient Privilege Log Is Meritless**

Plaintiffs next argue that, because "BKC's and UDC's privilege logs provide only group entries for most of the documents relating to the surveys, with no itemized date, author, recipient, or subject information," Joint Statement at 3, BKC has waived any privilege.  This argument barely deserves a response given that Plaintiffs' initial privilege log had no more specificity than BKC's log, contained the same group entries with no such itemization, and even asserted that its own surveys were protected.  (*See* Perlman Decl., Ex. G).  Moreover, BKC's privilege log clearly complies with Rule 26(b)(5).

 Rule 26(b)(5) requires that a party who withholds "otherwise discoverable" information describe the nature of the documents withheld based on privilege.  Fed. R. Civ. P. 26(b)(5)(A).  "If, however, an objection is made and that objection to documents has not been ruled on, then the objected to documents are not yet 'otherwise discoverable' within the meaning of Rule 26(b)(5)."  *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212-13 (D.D.C. 2006) (finding no privilege waiver where party who failed to list disputed documents on privilege log held justified belief that pending objection applied to the documents); *see also U.S. v. British Am. Tobacco (Invs.) Ltd.*, 387 F.3d 884, 890-91 (D.C.C. 2004) (same).

Even if the current privilege log were found to be deficient in some respect, the extreme sanction of waiver would not be appropriate.  Indeed, the privilege log "contains sufficient information to constitute a good faith effort at compliance."  *Humphreys v. Regents of the Univ. of Cal.*, No. C 04-03808 SI, 2006 WL 1409336, at *1 (N.D. Cal. May 23, 2006) (denying argument that party's privilege log was inadequate to prevent waiver).  *See also Millenium*

BKC's Opening Supp. Brief re: Privileged Surveys

*Holding Group, Inc. v. Sutura, Inc.*, No. 2:05-CV-00356-JCM-LRL, 2007 WL 121567, at *2 (D. Nev. Jan. 11, 2007) (rejecting "extreme sanction" of waiver where party claimed privilege but failed to produce privilege log); *Equal Rights*, 247 F.R.D. at 212 n.3 ("find[ing] no evidence of delay, inexcusable conduct, or bad faith on the part of the [withholding party] that would justify waiver of the claimed privileges"); *AMCO*, 2006 WL 931437, at *16 (rejecting waiver claim where withholding party's responses to initial production requests identified privilege objections, notwithstanding party's failure to submit a privilege log); *British Am.*, 397 F.3d at 885 (noting that party's "failure to log [ ] does not necessarily trigger waiver of privilege as a sanction"); *Pub. Serv. Co. of NH v. Portland Natural Gas*, 218 F.R.D. 361 (D.N.H. 2003) (stating that sanction of waiver when party invokes privilege but initially fails to produce a privilege log is "unnecessarily harsh").

  *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, No. C07-1359 PJH (JL), 2008 WL 5214330 (N.D. Cal. Dec. 12, 2008), a case on which Plaintiffs rely, is easily distinguished. Unlike in *Baxter*, where "[t]he Court [] several times previously had to order [the withholding party] to meet its discovery obligations," the Court in this action has entered no such previous discovery orders. *See* 2008 WL 5214330, at *1 (noting that, among other discovery orders directed at the withholding party in that case, the Court previously had held a show cause hearing why the party should not be sanctioned for failure to comply with a prior discovery order and, **on multiple occasions**, had ordered the party to update its prior privilege logs).

  Moreover, the court in *Baxter* did not find that the privilege for all of the documents at issue had been waived, but only for those that the withholding party "fail[ed] to identify the attorney whose communications or work product it claim[ed] [were] contained in the document." *Id.* at *3 (noting that, in addition to a privilege log, a party can establish protection "by, for example, submitting affidavits showing that certain facts exist to support the work product rule," which affidavits BKC has submitted in this action). Here, because no prior discovery orders have substantively addressed the pending discovery issues, and there is no record evidence whatsoever of delay, inexcusable conduct, or bad faith on BKC's part that would justify the "extreme" and "unnecessarily harsh" sanction of waiver, Plaintiffs' waiver argument is baseless.

### D. BKC Has Not Waived Its Attorney-Client and Work Product Privileges by Sharing the Documents at Issue with Parties with Whom It Has Common Interests and a Joint Defense Agreement

Plaintiffs' claim that BKC has waived its work product privilege by sharing restaurant-specific scope of work summaries with the individual franchisees who maintained and operated the respective restaurants, and who executed a joint defense agreement with BKC, is meritless.

"Where parties have a common interest or joint defense, work product protection is not waived by the mere sharing of information." *Aronson v. McKesson HBOC*, *Inc.*, No. 99-CV-20743, 2005 WL 934331, at *7 (N.D. Cal. Mar. 31, 2005). *See also ASARCO, LLC v. Americas Mining Corp.*, No. MS07-6289-EJL-MHW, 2007 WL 3504774, at * 8 (D. Idaho Nov. 15, 2007) ("Cooperation in a joint defense by sharing resources does not result in waiver of the work product privilege.").[11] Indeed, the very purpose of a joint defense agreement is to permit the sharing of information among parties with common interests without waiving any privilege. Clearly, in the case at bar, BKC's restaurants are the subject of Plaintiffs' ADA claims, and BKC and its franchisees -- who maintain and operate the restaurants -- have a common interest in defending against the claims.

BKC has not waived any privilege by sharing certain investigation documents with parties with whom it has common interests and joint defense agreements.

Nor does BKC's refusal to produce the joint defense agreements waive work product protection, because, as this Court has previously recognized, in a case on which Plaintiffs rely, the content of joint defense agreements can reveal defense strategies and therefore implicates the

---

[11]  Plaintiffs assert that BKC also disclosed the surveys to "contractors," Joint Statement at 3, but otherwise fail to provide any supporting background for such assertion. Regardless, "the 'mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege.' The privilege will be waived only if the party has disclosed work product to an adversary." *ASARCO*, 2007 WL 3504774, at * 7 (citation omitted). *See also Aronson*, 2005 WL 934331, at *6 ("Generally, waiver of the work product doctrine will be found only where the work product was voluntarily disclosed such that it may become readily accessible to an adversary.") (citation omitted). Plaintiffs do not (and cannot) claim that the contractors are an adversary to BKC or that any supposed disclosure to the contractors increased access to the withheld documents by Plaintiffs and BKC's other "adversaries." Nor do Plaintiffs explain why such contractors do not qualify as an "agent" of a party under Rule 26(b)(3)(A).

Case No. C 08-04262 WHA (JL)

BKC's Opening Supp. Brief re: Privileged Surveys

work product doctrine.  *See U.S. v. Stepney*, 246 F. Supp. 2d 1069, 1077-78 (N.D. Cal. 2003) (addressing courts' inherent authority under the Sixth Amendment to inquire into the terms of a joint defense agreement in a *criminal* case).  In *Stepney*, the Court conducted its inquiry into the joint defense agreements at issue in that case "*in camera* in order to avoid offering the prosecution [the opposing party] any hint of defense strategies."  *Id.* at 1078.

Thus, contrary to Plaintiffs' conclusory claim that the contents of a joint defense agreement are not privileged, Joint Statement at 3, *Stepney* supports BKC's claim that such agreements contain protected work product.  Indeed, a joint defense agreement is generally not discoverable because "it is not relevant to any claim or defense in [a] case."  *Ford Motor Co. v. Edgewood Props., Inc.*, No. CIV.A.06-1278 (HAA), 2009 WL 1416223, at *10 (D.N.J. May 19, 2009) (quoting *Warren Distrib. Co. v. InBev USA L.L.C.*, No. CIV. 07-1053 RBK, 2008 WL 4371763, at *3 (D.N.J. Sept. 18, 2008)).  *See also U.S. v. Int'l Longshoremen's Ass'n*, No. CV05-3212 (ILG) (VVP), 2006 WL 2014093, at *1 (E.D.N.Y. July 18, 2006) (noting that "information concerning joint defense agreements is sensitive, and that disclosure of such information should not be lightly ordered.") (citing, among other authority, *Stepney*).[12]

Plaintiffs' claims regarding waiver are untimely in any event, and, more significantly, are contrary to settled authority regarding the sharing of information by parties with common interests and a joint defense agreement.  Therefore, Plaintiffs' claims should be rejected.

### E.   Plaintiffs Fail to Meet Their Burden of Showing the Substantial Need and Undue Hardship for Obtaining Privileged Information

Plaintiffs argue that, based on the passage of time and on supposed alterations at certain restaurants, which Plaintiffs do not identify, they have a "substantial" need for the privileged investigation documents and information at issue.  However, by failing to conduct their own investigations and inspections, Plaintiffs have failed to meet their burden for obtaining otherwise privileged information.

---

[12]   Moreover, as in *Stepney*, BKC is willing to submit its joint defense agreements to the Court for an *in camera* inspection, should the Court believe that such a review would be helpful in resolving these issues.

Case No. C 08-04262 WHA (JL)

BKC's Opening Supp. Brief re: Privileged Surveys

Under Rule 26(b)(3), upon a determination that the work product protection applies, the burden shifts to the party seeking discovery to meet a two-part "substantial needs" test: "1) the party has substantial need of the materials to prepare the party's case, and 2) the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *6 (N.D. Cal. Apr. 18, 2003) (citing Fed. R. Civ. P. 26(b)(3) and *Hickman*). "[W]hen a party argues that substantial need exists because of the passage of time, the party seeking discovery must make a showing that the passage of time was not caused by avoidable negligence on their part." *Garcia*, 214 F.R.D. at 598 (citation omitted).

Plaintiffs fail to meet either prong of the two-part test. Indeed, Plaintiffs could have taken their own surveys at any time prior to initiating this action (as they did at a number of restaurants pre-suit) – and any time during the year and a half after they first notified BKC of their claims. *See, e.g.*, *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 173 (D. Colo. 1993) (denying production of privileged studies that, as the plaintiff in that action alleged, could not be replicated, where plaintiff "presented no evidence on the issues of substantial need and unavailability" and made "[n]o showing [ ] as to why [it] could not have performed similar studies" at or around the time the challenged studies were performed); *Martin*, 983 F.2d at 1263 (denying production of privileged consultant's test report that, as the plaintiff in that action alleged, could not be replicated, where plaintiff "had the technical capability to conduct the tests, where the resources necessary to conduct the tests were not shown to have been prohibitive, and where . . . [plaintiff] never explored the option of conducting its own tests.").

Further, any contention regarding substantial need and undue hardship is belied by Plaintiffs' receipt through discovery of franchisee-specific and public information regarding the construction and alternation histories of the subject restaurants. (*See* Perlman Decl., ¶ 28). Similarly, Plaintiffs neither have sought to have their own ADA experts take any surveys nor, as is their right under Rule 34(b)(2), have they requested an inspection of any of the subject restaurants. Moreover, Plaintiffs' initial privilege log demonstrates that BKC has done nothing to prevent Plaintiffs from surveying restaurants at any point, as the log identifies "surveys"

consisting of "measurements taken by paralegals at Burger King restaurants" as having been withheld. (*See* Perlman Decl., Ex. G).

Plaintiffs' reliance on *Zoller v. Conoco, Inc.*, 137 F.R.D. 9 (W.D. La. 1991) also is unavailing. *Zoller* was a personal injury action arising from an oil employee's accident while working on a fixed drilling platform, in which the condition of the platform at the time of the accident was important. *Id.* at 9. The documents at issue were photographs showing the accident location at the time of the accident. *Id.* The court required the production of the photographs because "the accident location changed dramatically after the accident," and because the photographs at issue there did not "contain confidential information or reflect the advice of an attorney." *Id.* at 10.

Here, however, not only have Plaintiffs had ample opportunity to conduct their own investigation of the BKLs during the years preceding and the months following their filing of this action, but any pictures, surveys, and other actions taken by the UDC consultants in preparation of BKC's defense in this action inherently reflect the consultants' professional advice and impressions regarding ADA compliance and accessibility issues. (*See* Perlman Decl., ¶ 7). Indeed, "a person's recording or noting his observation of events, although mainly consisting of a recordation of facts, usually includes some mental impressions, selection or conclusions, and, therefore, will be granted attorney-client protection." *Mason C. Day Excavating, Inc. v. Lumbermens Mut. Cas. Co.*, 143 F.R.D. 601, 608 (M.D.N.C. 1992) (finding that audiotape recordings of party's recollection of events were privileged, where the recordings, like the surveys in this action, were prepared "pursuant to the express direction of [the party]'s attorney for the purpose of securing legal advice" and "were intended to be confidential") (distinguishing *Zoller*, where the photographs were "completely factual or otherwise implicitly non-confidential"). *See also Cohen v. City of N.Y.*, 255 F.R.D. 110, 125-26 (S.D.N.Y. 2008) (production of investigator's notes allowed, where, unlike here, notes did not reflect the thought processes of counsel and, unlike here, "all parties [did not] have an equal opportunity to make the same relevant observations") (citing *Zoller*); *Chiquita Int'l Ltd. v. M/V Bolero Reefer*, No. 93 CIV. 0167 (LAP), 1994 WL 263603, at *2 (S.D.N.Y. June 7, 1994) (production of non-testifying

BKC's Opening Supp. Brief re: Privileged Surveys

Case No. C 08-04262 WHA (JL)

experts' photographs not allowed, where, as here, requesting party "had control over the [area at issue (a vessel)] from the date the cargo was loaded and therefore could have photographed the loading gear at any time.") (noting that party's failure to conduct its own investigations and collect its own evidence "does not constitute a substantial need warranting disclosure of the photograph") (distinguishing *Zoller*, "[w]here photographs are taken of a transient condition that has not been available for observation by both sides").

Plaintiffs' assertion that BKC's conduct somehow "ensured that Plaintiffs could not survey the restaurants during the period before and just after the suit," Joint Statement at 4, is simply untrue. Similarly, its attempt to distinguish *Equal Rights* is unpersuasive, where, as in that case, Plaintiffs "ha[ve] failed to meet [their] burden for obtaining trial preparation materials," 247 F.R.D. at 212, by failing to conduct their own inspections in this case. The truth is that, instead of completing their own surveys and due diligence, Plaintiffs attempt to co-opt the work of BKC and its consultants, and to obtain evidence on matters on which Plaintiffs bear the burden of proof. Such attempts should be denied, as the law neither allows a party to prove its case by taking another party's work product nor encourages the exploitation of another party's efforts in preparing for litigation. *See, e.g.*, *AMCO*, 2006 WL 931437, at **14-15 ("The primary purpose [of the work product doctrine] is to prevent exploitation of a party's efforts in preparing for litigation and thereby to encourage independent and efficient development of facts and issues.") (citing *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 576-77 (9th Cir. 1992)).

### F. Plaintiffs Should Be Required to Return an Inadvertently Produced Privileged Document, and to Refrain from Relying on It in Any Way

The instant discovery dispute stems from the inadvertent production by a franchised BKL restaurant of a work product privileged scope of work summary that the restaurant obtained pursuant to a joint defense agreement. In this context, "[a]fter being notified [of inadvertent production], a party must promptly return, sequester, or destroy the specified information and any copies it has; [and] must not use or disclose the information until the claim is resolved . . . ." Fed. R. Civ. P. 26(b)(5)(B). *See also Stillmunkes v. Givaudan Flavors Corp.*, No. C04-0085,

19

2009 WL 936605, at **6-7 (N.D. Iowa Apr. 7, 2009) (granting Rule 26(b)(5)(B) motion); *Ring Indus. Group, LP v. E Z Set Tank Co.,* No. 5:07CV103, 2008 WL 3501068, at *1 (W.D.N.C. Aug. 11, 2008) (same).

In the present action, by letter dated June 5, 2009, and on several occasions thereafter, BKC's counsel notified Plaintiffs' counsel that the subject document "was inadvertent production of work product," and requested that Plaintiffs promptly return the document and destroy any copies thereof. (*See* Perlman Decl., ¶ 23. *See also* J. Rubin Decl., ¶¶ 4-6 (stating that production by franchisee in fact was inadvertent) (Docket No. 111); S. Rubin Decl., ¶¶ 5-7 (concurring, as franchisee's counsel, that production by franchisee was inadvertent) (Docket No. 112). To date, Plaintiffs have not returned or destroyed the inadvertently produced document, as requested by the June 5, 2009 notice. Accordingly, under Rule 26(b)(5)(B), BKC moves to compel the return of the inadvertently produced scope of work summary, and for a protective order barring the disclosure of same or of the factual information therein.

### G. Plaintiffs' Improper Attempt to "Approve" Interrogatory No. 24 Fails Procedurally and Substantively.

In a passing reference in the Joint Statement, indeed, in a footnote, Plaintiffs request that this Court "approve" an interrogatory request (Interrog. No. 24) under Rule 33(a)(1) of the Federal Rules of Civil Procedure. (Joint Statement at 2, n.2.). Plaintiffs did not submit to the Court the interrogatory at issue, any other of its interrogatories, or a formal motion for leave under Rule 33(a)(1).[13] Plaintiffs' careless attempt to obtain relief related to Interrogatory No. 24 is flawed both procedurally and substantively, and must be denied.

### a. Plaintiffs' Request to "Approve" Interrogatory No. 24 Violates Federal and Local Discovery Rules.

---

[13] Although Plaintiffs assert that the Interrogatory, including its subparts, generally requests "measurements of relevant elements in the restaurants at issue" and "likely" violates the interrogatory-limit under Rule 33(a)(1) (Joint Statement at 2, n.2), Plaintiffs otherwise fail to identify the specific measurements requested, the specific elements at issue, the specific number of interrogatories in excess of the limit, and other specific information necessary for the Court's proper consideration of the alleged discovery dispute.

Case No. C 08-04262 WHA (JL)

BKC's Opening Supp. Brief re: Privileged Surveys

Under Rule 33(a)(1), "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). *See also* Civil Local Rule 33-3 ("A motion for leave to propound more interrogatories than permitted by [Fed. R. Civ. P.] 33 must be accompanied by a memorandum which sets forth each proposed additional interrogatory and explains in detail why it is necessary to propound the additional questions"). Plaintiffs are "required to submit the proposed interrogatories for review by the court with [the] motion, and not when responding to defendants' opposition." *Waterbury v. Scribner*, No. 1:05-CV-0764 OWW DLBPC, 2008 WL 2018432, at *2 (E.D. Cal. May 8, 2008) (citing *Capacchione v. Charlotte-Mecklenburg Schs.*, 182 F.R.D. 486, 492 (W.D.N.C. 1998)). *See also Jacobs v. Scribner*, No. 1:06-CV-01280 AWI-GSAPC, 2008 WL 2773999 (E.D. Cal. June 27, 2008) ("Plaintiff's motion was deficient at the time it was filed in that the motion did not include copies of Plaintiff's previously served interrogatories."). Moreover, "[t]he party requesting additional interrogatories must make a 'particularized showing' as to why additional discovery is necessary." *Waterbury*, 2008 WL 2018432, at *2 (citation omitted).

A party's failure to obtain leave of court prior to propounding interrogatories in excess of those permitted by Rule 33 dooms any motion relating to such interrogatories. *See McNeal v. Evert*, No. CIV S-05-0441 GEB EFB P, 2009 WL 728505, at *1 (E.D. Cal. Mar. 19, 2009) ("Plaintiff did not have leave of court to propound interrogatories in excess of those permitted by Rule 33(a)(1). Therefore, plaintiff's motion to compel responses to such interrogatories is denied.").

Plaintiffs in this action have made no showing whatsoever, let alone the requisite "particularized showing," as to why additional discovery would be necessary and not inconsistent with Rule 26(b)(2). Simply put, Plaintiffs' total disregard of applicable discovery rules is fatal to their request for any relief at this point related to Interrogatory No. 24.[14]

---

[14] Plaintiffs also failed to comply with this Court's standing order, which requires that parties in discovery disputes first "meet and confer" regarding any discovery dispute and then "immediately advise the Court in writing of the outcome and what, if any, parts of their dispute

BKC's Opening Supp. Brief re: Privileged Surveys

### b. Plaintiffs' Interrogatory No. 24 Is Unreasonably Cumulative and Would Be Grossly Burdensome.

Although the Court need look no further than to Plaintiffs' numerous procedural deficiencies in denying any relief related to Interrogatory No. 24, Plaintiffs' substantive arguments are equally fatal.

> Even assuming that [a] plaintiff has demonstrated necessity, under FRCP Rule 26(b)(2), the Court must limit the frequency of extent of discovery otherwise allowed if it determines that the "(I) the discovery sought is unreasonably cumulative or duplicative ... or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues".

*Waterbury*, 2008 WL 2018432, at *9.

In the present action, the information requested in Interrogatory No. 24 clearly is duplicative of information that, for the reasons addressed *supra*, is work product privileged information gathered by BKC's non-testifying accessibility experts and counsel in anticipation of this litigation and in preparation of BKC's defense and, accordingly, is unnecessarily cumulative.

Perhaps more importantly, under the circumstances, the burden and expense of the proposed discovery would grossly outweigh its likely benefit. Specifically, the number of individual interrogatories at issue is staggering – and exceeds the 25-interrogatorry limit by **thousands**.

On its face, Interrogatory No. 24 contains 19 separate subparts and asks for identification for "each" of the 92 California restaurants. The majority of the subparts further contain multiple discrete sub-subparts. *E.g.*, subpart (a) of the Interrogatory requests, for each restaurant, "[t]he width, slope and cross slope of all accessible routes, including sidewalks, ramps or curb ramps." (*See* Perlman Decl., Ex. I). In other words, subpart (a) of Interrogatory No. 24 implicates three separate measurements (width, slope and cross slope) for "all" accessible routes at 92 different

---

will be submitted to the Court for resolution." In the present action, Plaintiffs do not – and cannot in good faith – allege that they satisfied the Court's "meet and confer" and written notice requirements in the matter.

BKC's Opening Supp. Brief re: Privileged Surveys

restaurants.  Even assuming, conservatively, that each restaurant has only two accessible routes, *e.g.*, one ramp and one sidewalk, the total number of interrogatories for this subpart alone is **five hundred fifty-two (552)** – or 3 multiplied by 2 multiplied by 92.  Indeed, including all of its subparts and sub-subparts, Interrogatory No. 24 implicates approximately **8,800** individual interrogatories!  The burden and expense to BKC of responding to such number of interrogatories would be grossly over-burdensome, especially when Plaintiffs are not even entitled to production of the documents as a matter of law, and when Plaintiffs' own avoidable negligence has created any purported need for BKC's work product.

## Conclusion

The subject ADA surveys and other documents are clearly privileged from discovery, and Plaintiffs do not otherwise establish a sufficient basis in this action to breach the privilege.  BKC therefore respectfully requests that this Court:  (i) deny Plaintiffs' request for production; (ii) compel the return to BKC of the privileged survey that was inadvertently produced under a joint defense, and (iii) enter a protective order barring Plaintiffs' use or disclosure of the inadvertently produced documents and any factual information therein.  BKC further requests that the Court deny Plaintiffs any relief with respect to Interrogatory No. 24.

Dated: July 15, 2009

Respectfully submitted,

Case No. C 08-04262 WHA (JL)

BKC's Opening Supp. Brief re: Privileged Surveys

By: /s/Michael D. Joblove

GENOVESE JOBLOVE & BATTISTA, P.A.
Michael D. Joblove (*pro hac vice*)
Jonathan E. Perlman (*pro hac vice*)
Bank of America Tower, 44th Floor
100 S.E. Second Street
Miami, Florida 33131

GLYNN & FINLEY, LLP
Clement L. Glynn
Adam Friedenberg
One Walnut Creek Center
100 Pringle Avenue, Suite 500
Walnut Creek, CA 94596

*Attorneys for Defendant Burger King Corporation*

2000-491/#1890v.4

Case No. C 08-04262 WHA (JL)

BKC's Opening Supp. Brief re: Privileged Surveys