| | |
|---|---|
| Bill Lann Lee – CA State Bar No. 108452<br>Andrew Lah – CA State Bar No. 234580<br>Julia Campins – CA State Bar No. 238023<br>LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.<br>1330 Broadway, Suite 1800<br>Oakland, CA 94612<br>Telephone: (510) 839-6824<br>Facsimile: (510) 839-7839<br>Email: blee@lewisfeinberg.com<br><br>Timothy P. Fox - CA State Bar No. 157750<br>Amy Robertson (*pro hac vice*)<br>FOX & ROBERTSON, P.C.<br>104 Broadway, Suite 400<br>Denver, CO 80203<br>Telephone: (303) 595-9700<br>Facsimile: (303) 595-9705<br>Email: tfox@foxrob.com | Linda D. Kilb - CA State Bar No. 136101<br>DISABILITY RIGHTS EDUCATION & DEFENSE FUND<br>2212 Sixth Street<br>Berkeley, CA 94710<br>Telephone:(510) 644-2555<br>Facsimile:(510) 841-8645<br>Email: lkilb@dredf.org<br><br>Mari Mayeda - CA State Bar No. 110947<br>P O Box 5138<br>Berkeley, CA 94705<br>Telephone: (510) 848-3331<br>Facsimile: (510) 841-8115<br>Email: marimayeda@earthlink.net<br><br>Antonio M. Lawson - CA State Bar No. 140823<br>LAWSON LAW OFFICES<br>160 Franklin Street, Suite 204<br>Oakland, CA 94607<br>Telephone: (510) 419-0940<br>Facsimile: (510) 419-0948<br>Email: tony@lawsonlawoffices.com |

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL CASTANEDA, KATHERINE CORBETT, and JOSEPH WELLNER on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BURGER KING CORPORATION,<br><br>Defendant. | Case No. C 08-4262 WHA (JL)<br><br>**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT BURGER KING CORPORATION'S OPENING SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL SURVEY AND REMEDIATION INFORMATION, AND IN SUPPORT OF BKC'S MOTION TO COMPEL RETURN OF INADVERTENTLY PRODUCED PRIVILEGED DOCUMENTS AND FOR PROTECTIVE ORDER**<br><br>Hearing Date: August 19, 2009<br>Hearing Time: 9:30 a.m.<br><br>Chief Magistrate Judge James Larson<br>Courtroom F, 15th Floor |

Defendant's opposition to Plaintiffs' motion to compel production of objective measurement and alteration information is based on two false premises: that Plaintiffs could have conducted their own surveys at any time; and that Plaintiffs seek the opinions, legal strategies, and mental impressions of Defendant's counsel and consultants.

To the contrary, despite Plaintiffs' repeated requests, Defendant Burger King Corporation ("BKC") refused to disclose the addresses of the approximately 90 leased Burger Kings at issue here -- out of over 600 California Burger Kings -- until December, 2008, by which time BKC and its franchisees had begun altering those restaurants. For this reason, it has been and will continue to be impossible for Plaintiffs to survey the restaurants in the condition they were in during the first two and a half years of the class period. And Plaintiffs seek only objective factual information -- measurements; photographs; lists of alterations -- rather than anyone's strategies, opinions, or impressions. Finally, the information requested is necessary because the statutes at issue in this case all look to quantitative design standards to measure illegal barriers to wheelchair access and because the cost and nature of barrier removal work is relevant to liability under the Americans with Disabilities Act. *See* Pls.' Mot. to Compel (Docket No. 121) at 2-3.

## FACTS

Plaintiffs' Motion to Compel recites the facts that establish that Plaintiffs are entitled to the documents and information they seek. Below, Plaintiffs respond briefly to the facts alleged in Defendant Burger King Corporation's Opening Supplemental Brief in Opposition to Plaintiffs' Motion to Compel Survey and Remediation Information, and In Support of BKC's Motion to Compel Return of Inadvertently Produced Privileged Documents and for Protective Order ("BKC Opening Brief," Docket No. 123).

<u>Plaintiffs Did Not Know the Identity of the BKL Restaurants Until December, 2008</u>. Plaintiffs' Motion to Compel sets forth in detail the history of their attempts to get BKC to identify the Burger King leased ("BKL") restaurants at issue in this litigation. From the time Plaintiffs sent their demand letter in January, 2008, until December, 2008, when BKC finally

provided the addresses, Plaintiffs did not know which approximately 90 out of the 673[1] Burger King restaurants in California were at issue. BKC asserts in its Opening Brief that "the restaurants' identity was well known to Plaintiffs" and that Plaintiffs' assertion that they could not survey the restaurants "before and just after the suit" was "simply untrue." BKC Opening Br. at 12, 19. BKC does not support either of these statements with evidence and fails to acknowledge that it repeatedly refused to provide Plaintiffs with the addresses of the BKL restaurants, even arguing unsuccessfully to this Court that it should not have to do so. *See* Docket No. 15 at 3.

Although difficult to fathom, perhaps BKC is arguing that Plaintiffs should have surveyed all 673 California Burger Kings just to ensure that, somewhere in there, they had surveyed the relevant 90-some-odd BKL restaurants. Not only would this process have yielded some 580 surveys that were irrelevant to the present case, it would have been needlessly costly and time-consuming.[2] Instead of launching 673 restaurant surveys, Plaintiffs diligently pursued an approach that made far more sense. They requested that BKC identify the BKL restaurants, offered to jointly survey those restaurants, and -- when that proposal was rejected -- requested that BKC notify Plaintiffs before any changes to the BKL restaurants so that Plaintiffs could survey measurements relevant to the entire class period. That, too, BKC failed to do. Decl. of Timothy P. Fox in Supp. of Pls.' Mot. to Compel (Docket No. 121-2) ¶¶ 3-5.

<u>BKC Has Not Produced Any Other Documents Containing the Type of Measurement Information Plaintiffs Seek.</u> BKC asserts that it produced "Facility Inspection Reports" ("FIRs") in response to Plaintiffs' Interrogatory No. 23, requesting surveys. These documents are

---

[1] *See* Burger King 2008 10-K (Aug. 28, 2008) at 8, available at http://investor.bk.com/phoenix.zhtml?c=87140&p=irol-sec&secCat01Enhanced.2_rs=41&secCat01Enhanced.2_rc=10.

[2] Based on Plaintiffs' experience in *Moeller v. Taco Bell Corp.*, 02-5849 PJH (JL), it would likely have cost between $630,000 and $825,000 and taken approximately two to two and a half years to survey 673 Burger King restaurants. *See* Second Decl. of Amy F. Robertson in Supp. of Pls.' Mot. to Compel ("Second Robertson Decl.") ¶ 6-9. The 580 irrelevant surveys alone would have cost between $545,000 and $710,000. *Id.*

1  essentially overview descriptions of various parts of a Burger King restaurant that evaluate
2  compliance with BKC's standards. Accordingly, they do not require or contain comprehensive
3  measurements of the elements at issue. *See, e.g.,* Second Robertson Decl. Ex. 1.

4  <u>BKC Has Had All But Two of Plaintiffs' Surveys for Over a Year</u>. On May 28, 2008,
5  Plaintiffs sent BKC all of the surveys that it had done in California Burger King restaurants as of
6  that date -- a total of 31 surveys. Second Robertson Decl. ¶ 5. BKC ultimately informed
7  Plaintiffs that only three of those restaurants were BKL restaurants. *Id.* BKC later identified two
8  others; Plaintiffs then surveyed those restaurants, and later provided those surveys to BKC. Thus
9  while BKC asserts that Plaintiffs surveyed "a number of California restaurants," BKC Opening
10 Br. at 3, the number of relevant restaurants they surveyed was five out of the total of over 90.
11 Not wanting to be at a disadvantage after the case was filed, Plaintiffs initially asserted a work
12 product protection for these five surveys similar to the one asserted by BKC. Plaintiffs offered to
13 withdraw that claim of privilege if BKC would produce its surveys, Second Robertson Decl. Ex.
14 2, and then -- even without a *quid pro quo* -- Plaintiffs ultimately produced their surveys.

15 <u>Plaintiffs' Revised Privilege Log Contains All Required Detail</u>. BKC attempts to rebut
16 Plaintiffs' request for a compliant privilege log and/or a finding of waiver, *see* Pls.' Mot. to
17 Compel at 20, by arguing that "Plaintiffs' initial privilege log had no more specificity than
18 BKC's log," BKC Opening Br. at 13. BKC did not inform the court that, after BKC made this
19 argument to Plaintiffs during the meet and confer process, Plaintiffs promptly produced a revised
20 privilege log with all required information. Second Robertson Decl. ¶ 4 and Ex. 3.

21                                **ARGUMENT**

22 **I.    Plaintiffs have Substantial Need for the Documents and/or Information Requested
         and Cannot Obtain the Equivalent Through Other Means.**
23
24 Plaintiffs satisfy the substantial need standard, *see* Fed. R. Civ. P. 26(b)(3)(A)(ii), based
25 on two unrebutted facts: Plaintiffs did not know the identity of the BKL restaurants until
26 December 17, 2008; and, by that time, BKC and/or its franchisees had started to alter the
27 restaurants, making it impossible to secure measurements of relevant items as they existed during
28 the first part of the class period. Pursuant to Rule 26(b)(3)(A)(ii), Plaintiffs are entitled to

production of the measurement information in BKC's surveys.[3]

BKC also invokes Rule 26(b)(4)(B) which provides that facts known to nontestifying experts are only discoverable "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." The facts discussed herein and in Plaintiffs' Motion to Compel -- showing that the measurements of the elements at issue during the first part of the class period are no longer available -- makes it impossible (not just impracticable) for Plaintiffs to obtain these facts by other means. *See, e.g., Braun v. Lorillard Inc.*, 84 F.3d 230, 235-36 (7th Cir. 1996) (holding that "exceptional circumstances" existed to produce nontestifying expert's test results where that test had destroyed the sample in question); *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 175 F.R.D. 34, 44-45 (S.D.N.Y. 1997) (holding "exceptional circumstances" existed where nontestifying accounting expert had access to company's records immediately after the discrepancy at issue was discovered, after which records may have been lost).

As explained above, Plaintiffs did not know the identity of the restaurants at issue before December, 2008. And BKC's Opening Brief confirms Plaintiffs' deduction -- from the fact that the privilege log lists "scope of work documents and verification punchlists" starting in December, 2008[4] -- that alterations work had started at that time: BKC admits that it "asked that franchisees make the accessibility enhancements discussed in their scopes of work . . . ." BKC Opening Br. at 5. Alterations to the BKL restaurants make it impossible now to survey for pre-suit measurements, which are essential to assess liability during the first two and a half years of the class period. *See* Pls.' Mot. to Compel at 13.

BKC's principal response is to reiterate the unsupported assertion that Plaintiffs could

---

[3] In their portion of the Joint Statement of Issues Regarding Plaintiffs' Motion to Compel Survey and Remediation Information ("Joint Statement," Docket No. 103), *id.* at 2, and in their Motion to Compel, *id.* at 3, 13, 16, Plaintiffs also requested a response to their Interrogatory No. 11, that is, an account of recent alterations to the BKL restaurants. BKC did not address this request in its Opening Brief.

[4] *See* Decl. of Amy F. Robertson in Support of Pls.' Mot. to Compel ("Robertson Decl.," Docket No. 121-1) Ex. 12 at BKCPP000459, line 1717.

have conducted their own surveys "at any time prior to initiating this action." BKC Opening Br. at 17. Again, this is simply false. Thus, the cases on which BKC relies for the proposition that information is not "otherwise unavailable" when the requesting party could have obtained the information on its own are inapposite. *See Martin v. Monfort, Inc*, 150 F.R.D. 172, 173 (D. Colo. 1993) (the plaintiff "presented no evidence on the issues of substantial need and unavailability" and made "[n]o showing [ ] as to why [it] could not have performed similar studies"); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1255, 1262 (3d Cir. 1993) (finding that the defendant "had not precluded" the plaintiff from conducting its own test and that the subject dishwasher was still available for testing); *Chiquita Int'l Inc. v. M/V Bolero Reefer*, No. 93-civ-0167, 1994 WL 263603, at *1 (S.D.N.Y. June 7, 1994) (requesting party "had full access to the scene and was not precluded from creating a photographic record").

BKC also relies on *Mason C. Day Excavating, Inc. v. Lumbermens Mutual Casualty Co.*, 143 F.R.D. 601, 608 (M.D.N.C. 1992), for the proposition that a person's recording of events usually includes some mental impressions. *Mason C. Day* concerned audiotapes and transcriptions of the plaintiff himself verbally describing the disputed scene and his impressions and opinions of it. *Id.* at 605. This is inherently subjective and thus distinguishable from the objective information Plaintiffs seek here. In addition -- and again, in contrast to the present case -- the moving party in *Mason C. Day* already had its own contemporaneous notes of the scene and did not show that the information was relevant. *Id.* at 606.

The information at issue here is not an audio recording or transcription of BKC's or its consultants' impressions and opinions of the restaurants, but rather objective measurements and photographs of the restaurants and a list of the alterations to those restaurants. As such, it is far more similar to the objective studies and photographs ordered produced in the cases on which Plaintiffs rely. *See* Pls.' Mot. to Compel at 14-15.[5] Although BKC asserts that the photos and

---

[5] Citing *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1989); *Huggins v. Federal Express Corp.*, 250 F.R.D. 404, 406-07 (E.D. Mo. 2008); *Weber v. Paduano*, 02-Civ.-3392 (GEL), 2003 WL 161340, at *14 (S.D.N.Y. Jan. 22,
(continued...)

surveys Plaintiffs request "inherently reflect the consultants' professional advice and impressions," this is supported only by the say-so of BKC's counsel, *see* BKC Opening Br. at 18 (citing Perlman Decl. ¶ 7), who does not explain how a photograph or measurement of the objective conditions in a BKL restaurant inherently reflects anything other than those conditions.

BKC also alleges that the information Plaintiffs obtained from building departments provides an equivalent to the comprehensive measurements typically provided in access surveys. *See* BKC Opening Br. at 17. As Plaintiffs previously explained, however, they reviewed those documents and determined that they did not contain measurements of BKL stores during the class period. Robertson Decl. ¶ 40.

Ultimately, Plaintiffs are not attempting to "co-opt the work of BKC and its consultants." *See* BKC Opening Br. at 19. Plaintiffs have retained experts in the present case and have no need for UDC's or other consultants' opinions. And Plaintiffs' counsel are no strangers to surveys: they have conducted, commissioned, and/or participated in extensive surveys in other similar cases. Second Robertson Decl. ¶¶ 6-11. It is simply impossible for any surveys Plaintiffs now conduct in this case to ascertain the relevant measurements before the recent alterations.

## II. The Work Product Privilege Applies Only to "Documents and Tangible Things."

Based on its plain language, work product protection applies only to "documents and tangible things." Fed. R. Civ. P. 26(b)(3)(A). Thus, even when documents may be protected by the work product privilege, the information contained in them may not be. *See* Pls.' Mot. to Compel at 12-13; Advisory Committee Notes to Rule 26, 48 F.R.D. 487, 501 (1970) ("[O]ne party may discover relevant facts known or available to the other party, even though such facts are contained in a document which is not itself discoverable.")

BKC does not address the plain language of Rule 26(b)(3)(A) or the Advisory Committee

---

[5](...continued)
2003), *Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y 2000), *McDonald v. Clubb*, 143 F.R.D. 103, 104 (W.D. N.C. 1992)*; Milwaukee Concrete Studios, Ltd. v. Greeley Ornamental Concrete Products, Inc.*, 140 F.R.D. 373, 377 (E.D. Wis. 1991); *Zoller v. Conoco, Inc.*, 137 F.R.D. 9, 10 (E.D. La. 1991).

Notes (cited in Plaintiffs' portion of the Joint Statement, *see id.* at 3), but rather appears to misconstrue Plaintiffs to be arguing that the documents themselves are discoverable because they contain factual information. *See, e.g.*, BKC Opening Br. at 11 ("UDC's investigation *documents, including its surveys*, are not discoverable. (Emphasis added.)) Accordingly, the cases on which it relies only address the discoverability of documents. *See, e.g.*, *Hickman v. Taylor*, 329 U.S. 495, 508 (1947) (addressing production of statements and memoranda); *Equal Rights Ctr. v. Post Props., Inc.*, 247 F.R.D. 208, 211 (D.D.C. 2008) ("'even *factual portions of documents* may be withheld, so long as the document as a whole was created in anticipation of litigation.'"); *Tax Analysts v. I.R.S.*, 117 F.3d 607, 620 (D.C.C. 1997) (holding that "*[a]ny part of a [document]* prepared in anticipation of litigation . . . is protected by the work product doctrine"); *Martin*, 983 F.2d 1252, 1261-62 (3d Cir. 1993) (rejecting, the "argu[ment] that the work product doctrine should not apply *to [consultant's] report* because it contained purely factual material"), *all cited in* BKC Opening Br. at 10-11 (emphasis added).

BKC's fears for their "comprehensive litigation strategy," their views of the "ways that a court might interpret and apply state and federal accessibility guidelines," "the files and mental impressions of an attorney," and the "subjective evaluations of [an attorney's investigators]," BKC Opening Br. at 4, 12, are baseless as Plaintiffs do not seek litigation strategies, interpretations, mental impressions, or evaluations, but merely objective facts: What were the measurements of relevant features? What was done to any relevant features?

### III. Plaintiffs Respectfully Request Production or, In the Alternative, *In Camera* Review of the Joint Defense Agreements.

In general, work product protection is waived where the document in question is disclosed to a third party. *See, e.g., United States v. Bergonzi*, 216 F.R.D. 487, 497 (N.D. Cal. 2003). In this case, BKC concedes that it disclosed scope of work and other documents to its franchisees, but argues that this disclosure does not constitute waiver because BKC entered joint defense agreements with the franchisees. *See* BKC Opening Br. at 15-16. BKC will not, however, produce its joint defense agreements to Plaintiffs so that they can evaluate this claim, nor has it even listed those agreements in its privilege log.

1   In order to address the question whether BKC has waived work product protection
2   through disclosure to franchisees, Plaintiffs respectfully request that this Court order BKC to
3   produce its joint defense agreements to Plaintiff or, in the alternative, to the Court for review *in*
4   *camera*. BKC does not object to *in camera* review. BKC Opening Br. at 16 n.12. Plaintiffs urge
5   the Court to review the agreements to determine whether, in view of any threats by BKC to hold
6   franchisees liable, the BKC and its franchisees could be said to have a "common interest." *See*
7   *Bergonzi*, 216 F.R.D. at 495. If not, Plaintiffs respectfully urge the Court to hold that waiver has
8   occurred and that any documents shared with franchisees must be produced to Plaintiffs.

## IV. BKC's Privilege Log Is Not Adequate.

Plaintiffs established, in their Motion to Compel, that lines 1707-10, 1713-17, and 1737-38 of BKC's privilege log did not provide sufficient information to satisfy Rule 26(b)(5)(A)(ii) and Paragraph 16 of Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases Before Judge William Alsup (Docket No. 3) because the group entries did not provide authors, recipients, subjects, and dates for each individual document. Plaintiffs argued further that because BKC waited three months[6] to serve its privilege log and then refused to provide compliant entries after repeated requests, BKC had waived the privilege as to the documents covered by those line items. *See* Pls.' Mot. to Compel at 17-19. In the alternative, Plaintiffs requested that BKC be ordered to provide a compliant log for those items.

BKC largely does not attempt to defend the adequacy of its privilege log, but merely to stave off the sanction of waiver. *See* BKC Opening Br. at 13-14. With respect to waiver, BKC does not cite or attempt to distinguish controlling Ninth Circuit law holding that a delay of five months in producing a privilege log, standing alone, could justify waiver. *See Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for the Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) The waiver cases BKC cites are distinguishable. For example, the court in *Humphreys v. Regents of the University of California*, No. C 04-03808 SI, 2006 WL 1409336 (N.D. Cal. May

---

[6] Plaintiffs' Motion to Compel stated that the delay was four months, *see id.* at 5, 18; Plaintiffs corrected that error. *See* Pls.' Mot. to Compel: Erratum (Docket No. 134).

23, 2006), refused to hold that waiver had occurred on the grounds that the plaintiff could always meet and confer with the defendant to request a description. *Id.* at *1. Plaintiffs here have already attempted that route without success. *See* Robertson Decl. Exs. 17, 20. In *Equal Rights Center*, 247 F.R.D. at 212 n.3, the court held that there was no evidence of delay, inexcusable conduct, or bad faith. In this case, there has been significant delay: three months from BKC's responses to service of a privilege log, and another three months since then without the detailed descriptions required by the Federal Rules and Judge Alsup's Supplemental Order.[7]

## V. Plaintiffs Request Approval of Interrogatory No. 24.

### A. Interrogatory No. 24 is Neither Burdensome Nor Duplicative.

There is no question that Interrogatory No. 24 requests a large number of individual measurements for each restaurant. There is also no question that -- according to BKC itself -- BKC has already collected this information: it asserts that Interrogatory No. 24 is "duplicative of information . . . gathered by BKC's non-testifying experts and counsel . . . ." BKC Opening Br. at 22. Plaintiffs are not asking BKC to go out and gather this information anew, but merely to provide Plaintiffs with information that it admits it already has -- essentially, a transcription task. This is not onerous and BKC provides no explanation why such transcription should be "grossly over-burdensome." *Id.* at 22. Interrogatory No. 24 is not duplicative for the simple reason that Plaintiff have made clear they are seeking either production of the surveys or a response to Interrogatory No. 24, not both. *See* Pls.' Mot. to Compel at 25.

Finally, Plaintiffs have made a particularized showing of the necessity of Interrogatory

---

[7] BKC also argues that a log is not required unless the documents are "otherwise discoverable," Fed. R. Civ. P. 26(b)(5)(A), and is thus not required here because BKC's privilege objection has not yet been ruled on. *See* BKC Opening Br. at 13. This only applies where a *non-privilege* objection has been made, as BKC's cases make clear. *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212-13 (D.D.C. 2006) (pending objection related to the responsiveness of the documents); *United States v. British Am. Tobacco (Invs.) Ltd.*, 387 F.3d 884, 890-91 (D.D.C. 2004) (holding that party did not have to produce documents when "three of [its] general objections applied"). Defendants do not defend their failure to produce the documents at issue on any other grounds besides privilege.

1  No. 24: in the absence of the surveys themselves, it is the only way Plaintiffs will be able to
ascertain measurements of the contested elements during the class period.

### B. BKC's Procedural Objections to Interrogatory No. 24 Are Groundless.

BKC also makes several procedural objections to Plaintiffs' request for Court approval of Interrogatory No. 24. *See* BKC Opening Br. at 21. BKC argues that Plaintiffs did not submit a copy of Interrogatory No. 24; in fact, it is Exhibit 19 to the Robertson Declaration. BKC cites *Jacobs v. Scribner*, No. 1:06-CV-01280 AWIGSAPC, 2008 WL 2773999 (E.D. Cal. June 27, 2008), for the proposition that Plaintiffs' motion was deficient because it did not include a full copy of previously-served interrogatories. While this does not appear to be required by federal or local rule, BKC itself remedied this gap by submitting a full copy of Plaintiffs' previous interrogatories, Perlman Decl. Ex. B, a move that satisfies the *Jacobs* standard. *See id.,* 2008 WL 2773999, at *1 (holding that because the previous interrogatories were later filed, it had a proper record). BKC argues that Plaintiffs failed to meet and confer concerning Interrogatory No. 24; Exhibits 18, 21, and 22 to the Robertson Declaration demonstrate that this is not correct. Finally, BKC argues that Plaintiffs failed to secure court approval, but of course that is precisely what Plaintiffs are now seeking.[8]

## VI. BKC's Motion to Compel Return of Inadvertently Produced Documents.

For the reasons set forth above and in Plaintiffs' Motion to Compel, Plaintiffs are entitled to production of the documents that BKC requests Plaintiffs to return. Meanwhile, Plaintiffs have sequestered all such documents as required by Rule 26(b)(5)(B). Should this Court conclude that Plaintiffs are not entitled to production of the documents or any subset (and any appeal reach a similar conclusion), Plaintiffs will return the documents in question. Plaintiffs do not argue that the documents lost any privilege by dint of their inadvertent production.

---

[8] BKC asserts that Interrogatory No. 24 used information from inadvertently produced documents as to which BKC asserts a privilege. BKC Opening Br. at 7. This is incorrect. The detailed measurements in that interrogatory were derived from the undersigned's extensive previous experience with access surveys. Second Robertson Decl. ¶¶ 6-11.

|   |   |   |
|---|---|---|
| | | Respectfully submitted, |
| | | FOX & ROBERTSON, P.C. |
| | By: | /s/ Amy F. Robertson |
| | | Amy Robertson (*pro hac vice*) |
| Dated: July 29, 2009 | | Counsel for Plaintiffs |