Bill Lann Lee – CA State Bar No. 108452
Andrew Lah – CA State Bar No. 234580
Julia Campins – CA State Bar No. 238023
LEWIS, FEINBERG, LEE,
RENAKER & JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA  94612
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
Email: blee@lewisfeinberg.com
alah@lewisfeinberg.com
jcampins@lewisfeinberg.com

Timothy P. Fox - CA State Bar No. 157750
Amy Robertson (pro hac vice)
FOX & ROBERTSON, P.C.
104 Broadway, Suite 400
Denver, CO 80203
Telephone: (303) 595-9700
TTY: (877) 595-9706
Facsimile: (303) 595-9705
Email: tfox@foxrob.com
       arob@foxrob.com

*Attorneys for Plaintiffs*
(*additional counsel listed on signature page*)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MIGUEL CASTANEDA, KATHERINE CORBETT, and JOSEPH WELLNER on behalf of themselves and others similarly situated | ) ) ) ) | Case No. C 08-4262 WHA (JL) |
| Plaintiff, | ) ) ) | **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| vs. | ) ) | Date:   September 17, 2009 Time:  8:00 a.m. |
| BURGER KING CORPORATION, | ) ) | Judge:  William H. Alsup |
| Defendants. | ) ) ) | |

# TABLE OF CONTENTS

Page No.

I.   Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Burger King's Policy Failure Supports Class Certification . . . . . . . . . . . 1

        1.   Burger King as a Lessor Is Liable for Access
Violations at BKLs and *Neff v. American Dairy
Queen Corp.* Is Irrelevant. . . . . . . . . . . . . . . . . . . . . . . . . . 2

        2.   Burger King May Not Delegate Its Duty to Ensure
that BKLs Comply with Access Requirements. . . . . . . . 2

        3.   Burger King's Admitted Failure To Satisfy this
Non-Delegable Duty Provides Ground for Class
Certification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   Plaintiffs Have Standing to Address the Classwide Claims . . . . . . . . . . 4

    C.   Plaintiffs' Claims Are Not Moot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.   Plaintiffs Have Satisfied All of the Prerequisites for a Class Action . . . . . 8

        1.   This Case Is a Prototypical Class Action . . . . . . . . . . . . . 8

        2.   The Proposed Class Is So Numerous that Joinder Is
Impracticable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.   There Are Common Questions of Law and Fact . . . . . . . 10

        4.   Named Plaintiffs' Claims Are Typical of
Those of the Proposed Class . . . . . . . . . . . . . . . . . . . . . 12

        5.   Proposed Class Counsel Will Protect the
Interests of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        6.   The Proposed Class Satisfies Rule 23(b)(2) . . . . . . . . . 13

    E.   Plaintiffs' State Law Claims Are Valid and Should Be Certified . . . . . . 14

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

1

# TABLE OF AUTHORITIES

2

<u>Page No.</u>

3

**FEDERAL CASES**

4

*Access Now, Inc. v. AHM CGH, Inc.*,
   200 WL 1809979 (S.D. Fla. July 12, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5

*Access Now, Inc. v. Ambulatory Surgery Ctr. Group, Ltd*,
6    197 F.R.D. 522 (S.D. Fla. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

7

*Access Now, Inc. v. Walt Disney World Co.*,
   211 F.R.D. 452 (M.D. Fla. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8

*American Council of the Blind v. Astrue*,
9    2008 WL 4279674 (N.D. Cal. Sept. 11, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 10

10

*Armster v. U.S. Dist. Court*,
   806 F.2d 1347 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11

*Arnold v. United Artists Theatre Cir., Inc.*,
12    158 F.R.D. 429 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 11, 14

13

*Ass'n for Disabled Ams., Inc. v. Motiva Enters., LLC*,
   No. 99-0580 (S.D. Fla. Oct. 18, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

14

*Bautista-Perez v. Holder*,
15    2009 WL 2031759 (N.D. Cal. July 9, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 12

16

*Bay Area Addiction Research & Treatment v. City of Antioch*,
   179 F.3d 725 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

17

*Botosan v. Paul McNally Realty*,
18    216 F.3d 827 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

19

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
   249 F.R.D. 334 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 10-11

20

*Celano v. Marriott International, Inc.*,
21    242 F.R.D. 544 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

22

*Clavo v. Zarrabian*,
   2004 WL 3709049 (C.D. Cal. May 17, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

23

*Colon v. League of United Latin Am. Citizens*,
24    91 F.3d 140 (5th Cir. 1996) (unpublished) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

25

*Cupolo v. Bay Area Rapid Transit*,
   5 F. Supp. 2d 1078 (N.D. Cal.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

26

*Eisen v. Carlisle & Jacqueline*,
27    417 U.S. 156 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28

*///*

*Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.,*
430 F. Supp. 2d 996 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
528 U.S. 167 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Johnson v. Kriplani,*
2008 WL 2620378 (E.D. Cal. July 2, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lentini v. Cal. Ctr. for the Arts,*
370 F.3d 837 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Lightbourn v. County of El Paso, Tx,*
118 F.3d 421 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lucas v. Kmart Corp.,*
2005 WL 1648182 (D. Colo. July 13, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Moeller v. Taco Bell Corp.,*
220 F.R.D. 604 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Moeller v. Taco Bell,*
2007 WL 2301778 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nat'l Org. of Disability v. Tartaglione,*
2001 WL 1258089 (E.D. Pa. Oct 22, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Neff v. American Dairy Queen Corp.,*
58 F.3d 1063 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Pickern v. Pier 1 Imports (U.S.), Inc.,*
457 F.3d 963 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Rodriguez v. Hayes,*
--- F.3d ---, 2009 WL 2526622 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Thomas Jefferson Univ. v. City of Antioch,*
179 F.3d 725 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Nobles,*
422 U.S. 225 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Voytek v. Univ. of Cal.,*
1994 WL 478805 (N.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*///*

*Xiufang Situ v. Leavitt,*
    240 F.R.D. 551 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**STATE CASES**

*Munson v. Del Taco, Inc.,*
    46 Cal. 4th 661 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People ex rel. Deukmejian v. CHE, Inc.,*
    150 Cal. App. 3d 123 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL STATUTES**

42 U.S.C. § 12182 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

42 U.S.C. § 12183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATE STATUTES**

Cal Civ. Code. § 52 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Cal Civ. Code. § 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Civ. Code. § 54.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cal. Civ. Code § 55.57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**FEDERAL RULES**

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**FEDERAL REGULATIONS**

28 C.F.R. § 36.406 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**OTHER AUTHORITIES**

Alba Conte and Herbert B. Newberg,
    Newberg on Class Actions § 2:7 (4th Ed., updated 2008) . . . . . . . . . . . . . . . . . . . . . . . 5

1

## I.   Introduction

2       Plaintiffs established, in their Memorandum in Support of Motion for Class Certification

3   (Dkt. #138) ("Class Cert. Memo") that:  (1) the proposed class has common experiences of

4   discrimination at Burger King leased ("BKL") restaurants, creating common issues of law and

5   fact; (2) Burger King leases all of the BKL restaurants, obligating it to ensure that BKLs comply

6   with the ADA and thus state law, and making it liable for violations of those statutes; and (3)

7   despite exercising control over virtually every aspect of the BKLs, Burger King has abdicated

8   virtually all responsibility for compliance with the ADA and state accessibility requirements to

9   franchisees, leading to a uniform failure to ensure accessibility by franchisees.  These factors

10  demonstrate that class certification is appropriate.

11      Burger King's Opposition (Dkt. #184) ("BK Opp.") does not dispute the vast majority of

12  facts set forth in Plaintiffs' opening brief.  Instead, it focuses on three threshold defenses.  First,

13  Burger King trumpets the fact that it makes very little effort to ensure that BKLs comply with

14  state and federal accessibility requirements in the mistaken belief that only a policy that

15  affirmatively requires violations of accessibility requirements makes it liable.  Second, it argues

16  that Plaintiffs lack standing to challenge practices at restaurants they have not personally

17  patronized because the ADA is site specific.  Third, it contends that its program of post-suit

18  attempted remediation has mooted the need for injunctive relief.

19      The ADA, however, imposes an affirmative obligation to prevent and remove barriers.

20  Because it leases BKLs, Burger King has a non-delegable duty to ensure that BKLs comply with

21  access requirements, and, as courts including this one have held, failing to have in place adequate

22  policies to ensure such compliance is itself a violation and presents a common question for the

23  class.  With respect to standing, the Court has previously determined that the ADA is *not* site

24  specific.  Nor is this case moot.  But for these threshold defenses, Burger King largely does not

25  contest Rule 23(a) and (b)(2), making class certification appropriate.

## II.   Argument

### A.   Burger King's Policy Failure Supports Class Certification.

28      It is undisputed that Burger King leases the BKLs.  BK Opp. at 1.  As a result, it is liable

for any violations that exist in BKLs, whether those barriers are affirmatively required by its policies or result from its failure to have in place appropriate policies. Burger King's assertion that it abdicates compliance duties to its franchisees is a concession of a common failure to implement a legally required policy that supports class certification.

### 1. Burger King as a Lessor Is Liable for Access Violations at BKLs and *Neff v. American Dairy Queen Corp.* Is Irrelevant.

The ADA imposes liability on any entity that "owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Burger King leases the BKLs and is accordingly liable under the ADA.[1] Burger King relies heavily on *Neff v. American Dairy Queen Corp.*, 58 F.3d 1063 (5th Cir. 1995), but *Neff* is a red herring. The defendant in *Neff* was not a lessor. To establish that the defendant was covered by the ADA, Neff tried to show that the defendant franchisor "operate[d]" the facility. *Id.* at 1065. The Fifth Circuit examined the franchise agreement and held that the defendant was not an operator. *Id.* at 1066-69. Here, in contrast, Burger King indisputably leases these restaurants and is therefore liable for any violations of the ADA.

### 2. Burger King May Not Delegate Its Duty to Ensure that BKLs Comply with Access Requirements.

Burger King argues that its franchise agreement makes its lessee franchisees contractually liable for accessibility compliance. BK Opp. at 5. But, it may not delegate to lessees its duty to ensure that BKLs comply with the ADA. The U.S. Department of Justice, in its ADA Technical Assistance Manual ("TAM"), states, "[A]ny allocation made in a lease or other contract is only effective as between the parties, and both landlord and tenant remain fully liable for compliance with all provisions of the ADA relating to that place of public accommodation." TAM at § III-1.2000 (emphases added), available at http://www.ada.gov/taman3.html.[2] "[A] landlord has

---

[1] As will be discussed below, because a violation of the ADA is automatically a violation of both of the California statutes, any discussion of ADA violations applies equally to Plaintiffs' state law claims. *See infra* Section II.E.

[2] The TAM "must . . . be given substantial deference and will be disregarded only if 'plainly erroneous or inconsistent with the regulation.'" *Bay Area Addiction Research &*

(continued...)

1  an independent obligation to comply with the ADA that may not be eliminated by contract."

2  *Botosan v. Paul McNally Realty*, 216 F.3d 827, 833 (9th Cir. 2000).  Indeed, Burger King itself

3  has previously admitted that "[t]he ADA . . . creates strict liability for injunctive relief against . . .

4  lessors, and lessees and leaves it to those parties to decide among themselves who caused the

5  violation."  Mem. of P&A in Supp. of Def. BKC's Mot. to Dismiss (Dkt #29) at 21-22.

6        **3.**     **Burger King's Admitted Failure To Satisfy this Non-Delegable Duty Provides Ground for Class Certification.**

7

8        Burger King's failure to implement and enforce policies to ensure compliance where it

9  has a duty to comply provides a solid basis for class certification.  As this Court held, in

10  *American Council of the Blind v. Astrue*, "'it is sufficient for plaintiffs to allege that defendant

11  has failed to take action—i.e., failed to implement a practice or policy—that satisfies his

12  obligations' to satisfy the commonality requirement."  2008 WL 4279674, at *4 (N.D. Cal. Sept.

13  11, 2008) (quoting *Xiufang Situ v. Leavitt*, 240 F.R.D. 551, 560-61 (N.D. Cal. 2007)); *see also*

14  *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 344-49 (N.D.

15  Cal. 2008) (certifying class where plaintiffs pled lack of adequate policy regarding individuals

16  with disability, even though defendant argued that it had no centralized policy of discrimination,

17  but rather made individualized decisions).

18        Here it is undisputed that Burger King fails in many respects to meet its non-delegable

19  duty to comply with the ADA.  For example, Burger King acknowledges that it has the "right to

20  approve whatever final plans the franchisee intends to use," but admits that it "does not review or

21  approve plans for compliance with . . . accessibility laws."  McGrory Decl. (Dkt. #182) ¶¶ 4-5.

22  While franchisees "must adhere to strict standardized operating procedures and requirements" set

23  forth in the MOD, Campins Decl. Ex. 98 at 6, Burger King concedes that the MOD "references

24  accessibility issues only generally," BK Opp. at 4.  Finally, Burger King acknowledges that it

25  does not provide design specifications for many of the barriers reported by putative class

26

27       [2](...continued)

28  *Treatment v. City of Antioch*, 179 F.3d 725, 732 n.11 (9th Cir. 1999) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

1    members.  McGrory Decl. ¶ 13.

2          **B.      Plaintiffs Have Standing to Address the Classwide Claims.**

3          Defendant premises the majority of its opposition on the argument—resuscitated from its

4    Motion to Dismiss—that the Named Plaintiffs do not have standing to assert claims against

5    Burger King for those BKLs they have not visited.  *E.g.* BK Opp. at 7-10.  This legal issue has

6    already been decided in Plaintiffs' favor by this Court in denying the Motion to Dismiss.  *See*

7    Dkt. #69 at 4-11.  Burger King simply ignores this law of the case and reasserts the already-

8    rejected argument that "Title III ADA claims are site-specific."  BK Opp. at 1; *see also id.* at 7.

9          This Court has specifically held that "ADA standing is not necessarily site specific."  Dkt.

10   #69 at 8; *see also id.* at 6 ("Article III standing for ADA claims is not inherently site specific.").

11   This Court ruled that "most district courts to have considered the issue [of common injuries in

12   the ADA] find that a plaintiff may challenge discrimination on behalf of a class where the

13   discrimination arises from a common policy or practice, or a common architectural design, at

14   multiple commonly owned or affiliated locations."  *Id.* at 7.  It cited with approval language from

15   *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 429 (N.D. Cal. 1994), certifying a class

16   where the challenged "design features" are alleged to exist at "many if not all of defendant's

17   theaters," and "the legality of those features are legal issues common" to the class."  Dkt. #69 at

18   7 (quoting *Arnold*, 158 F.R.D. at 449).  The conclusion that Title III claims are not site-specific

19   "simply recognizes that the specific injury under the ADA is not a specific barrier at a specific

20   site but instead the discriminatory policy or design or decision."  *Id.* at 8.

21         The injuries suffered by putative class members—like those in *Arnold* and the other cases

22   on which this Court relied, *id.* at 7 n.5—were caused by design features alleged to exist at many

23   if not all BKLs, the legality of which turns on common legal issues and various corporation-wide

24   factors.  These factors include not only availability of resources, as in *Arnold*, but failure to

25   ensure required access, and extensive control over designs and alterations.[3]  Plaintiffs have thus

26

27         [3]  Burger King also misrepresents *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15
28   (1982), by adding the word "only" before the Supreme Court's language, "[s]ignificant proof that
                                                                              (continued...)

1   provided ample evidence of discriminatory policies, designs, and decisions that cause the

2   common barriers experienced by putative class members.

3        Burger King's analysis is based on plucking out and restrictively interpreting the word

4   "policy" as used by this Court, but ignoring the words "or design or decision" that follow it.  Dkt.

5   #69 at 8.  For example, it states that "it is *undisputed* that there is no BKC central policy with

6   respect to any item complained of by Plaintiffs, as BKC indisputably does not provide

7   specifications on the weight of doors, the height of condiment and drink dispensers, the

8   dimensions of dining room tables, or the number or width of parking spaces."  BK Opp. at 7.

9   Although there is evidence that Burger King in fact provides such specifications,[4] the policy in

10  question need not be one explicitly *compelling* non-compliance.  Rather, common injuries for

11  standing purposes can be those that arise from policies—such as those demonstrated by Plaintiffs

12  here—that encourage or permit violations, or fail to ensure compliance with the accessibility

13  laws.  Class Cert. Memo at 9-15; *see also supra* at 3 (citing *Astrue*; *Californians for Disability*

14  *Rights*).  Again, because of Burger King's non-delegable duty to comply with the accessibility

15  laws, its failure to implement adequate policies establishes common injury.

16       Moreover, "[w]hether or not the named plaintiff who meets individual standing

17  requirements may assert the rights of absent class members is neither a standing issue nor an

18  Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23

19  governing class actions."  1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 2:7

20  (4th Ed., updated 2008); *see also Lucas v. Kmart Corp.*, 2005 WL 1648182, at *3 (D. Colo. July

---

[3](...continued)
an employer operated under a general policy of discrimination conceivably could justify a
[broader] class."  BK Opp at 8 n.9 (second quote of *Falcon*); *see Staton v. Boeing Co.*, 327 F.3d
938, 955 (9th Cir. 2003) (clarifying *Falcon* as permitting cases challenging policies *or* practices).

[4]  Indeed, by way of example Burger King insists that BKL franchisees only use
equipment from specific vendors, leases equipment to at least some of the BKL franchisees, and
insists that any changes to "products, equipment, uniforms, restaurant facilities, service format,
and Advertising" be approved by Burger King, which takes ownership over those ideas.  *See,
e.g.*, Campins Decl. Exs. 110 at 13452, 112 at BKC 63495; Boothby Supp. Decl. Exs. 2-4 at
67919, 85787, 113322.  This last provision is part of a section of the Successor Franchise
Agreement titled "Standards and Uniformity of Operations."  *Id.* Ex. 3 at 85787.

13, 2005) ("Defendants' objection regarding representative Plaintiffs' standing to assert claims on behalf of individuals who patronized other Kmart stores is subsumed by my determination that the Rule 23(a) prer[e]quisites have been met.").  Because Plaintiffs have established that they satisfy Rule 23, they have standing to represent the class.

### C.    Plaintiffs' Claims Are Not Moot.

Burger King argues that the ten BKLs the Named Plaintiffs visited are currently in compliance with the ADA and the California Building Code ("CBC").  This argument goes to the merits and is improper for consideration at this juncture.  *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 178 (1974); *Bautista-Perez v. Holder*, 2009 WL 2031759, *4 (N.D. Cal. July 9, 2009).[5]

Burger King's "'voluntary cessation of a challenged practice,'" moreover, cannot moot Plaintiffs' claims unless "'subsequent events [make] it *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citations omitted, emphasis added). Burger King has the "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* (citations omitted; alteration in original). Burger King cannot meet that heavy burden.

First, Burger King's mootness argument is based entirely on the reports of their expert, Kim Blackseth, who states that he surveyed 10 of the 93 current BKLs last month, that is, after the conclusion of Burger King's alterations program.  *See* Dkt. #162 at 2.  These reports are thus irrelevant to the common discriminatory experiences of class members during the vast majority of the class period, from April 2006 to mid-2009.[6]

_____

[5]  Similarly—and contrary to Burger King's argument—Plaintiffs have no obligation to prove their claims by submitting any measurements of the barriers at this juncture.  The question to be determined at this stage is not whether Plaintiffs will ultimately prevail on their claims, but whether those claims are properly addressed on a classwide basis.  *See, e.g.*, *Bautista-Perez*, 2009 WL 2031759, at *7.

[6]  Irrespective of the relevance and merits of Mr. Blackseth's reports, Plaintiffs urge the Court to disregard these reports, as neither Mr. Blackseth nor his reports were disclosed to Plaintiffs before the filing of Burger King's brief, let alone by the July 1, 2009, close of class

(continued...)

1    Second, Plaintiffs seek injunctive relief protecting the class from future discrimination,

2    including a change in policies and future monitoring. *See, e.g.*, First Amended Complaint

3    ("FAC"), Relief ¶ 5 (Dkt. #72).  Burger King has provided no evidence that the barriers

4    experienced by Plaintiffs and their declarants will not recur in the future.  Even "promised

5    improvements and policy changes do not moot a claim for injunctive relief." *Moeller v. Taco

6    Bell*, 2007 WL 2301778, at *7 & n.13 (N.D. Cal. 2007) (citing cases).[7]  Frequent alterations and

7    remodels, among other factors, preclude mootness. *Id.* at *8.  Here, Burger King generally

8    requires that a BKL undergo a significant remodel every 20 years.  With over 90 restaurants at

9    issue, it is reasonable to infer that 4-5 BKLs are remodeled each year.  Class Cert. Memo at 11.

10   Whatever the current state is of any BKL, an injunction is needed covering future remodels,

11   future acquisitions, maintenance, and monitoring. *See Moeller*, 2007 WL 2301778, at *8.

12       Third, Burger King's failure to comply with the access laws until it was in litigation

13   negates any mootness, *see Armster v. U.S. Dist. Court*, 806 F.2d 1347, 1357 (9th Cir. 1986), as

14   does its persistent denial of responsibility, *Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, 430 F.

15   Supp. 2d 996, 1006 (N.D. Cal. 2006), and its failure to comply with the ADA despite an earlier

16   settlement addressing ADA violations, *see* FAC ¶ 41 (*Day* litigation).

17       Finally, Mr. Blackseth's submissions to this court do not satisfy Burger King's "heavy

18   burden" of proving current compliance.  To take one very telling example, seven of the ten

19   restaurants about which he opines were built in the 1970s,[8] and were thus governed by the

20   American National Standards Institute, Inc.'s ANSI A117.1-1961. *People ex rel. Deukmejian v.*

21

22       [6](...continued)

23   discovery (*see* Dkt. #69 at 17). *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 n.5
     (9th Cir. 2006) (exclusion of expert witness disclosed after scheduling deadline not abuse of

24   discretion).

25       [7] *See also Clavo v. Zarrabian*, 2004 WL 3709049, at *4 (C.D. Cal. May 17, 2004)

26   (holding that implementing new policies did not moot ADA barrier claim); *Cupolo v. Bay Area
     Rapid Transit*, 5 F. Supp. 2d 1078, 1084 (N.D. Cal.1997) (holding that voluntary remediation of

27   alleged ADA violations did not moot claims).

28       [8] *See* Boothby Supp. Decl, Ex. 1 at 1-2 (build dates for stores 997, 1864, 1943, 2032,
     2055, 2288, and 2505 were between 1977 and 1979).

1   *CHE, Inc.*, 150 Cal. App. 3d 123, 133-34 (1983).  While admitting that "there were limited

2   access standards in place since 1970," *see, e.g.,* Dkt #183-2 at 1, Mr. Blackseth does not apply

3   them to the seven restaurants built during that decade.[9]

4       Ultimately, the question of compliance presents common questions of law and fact that

5   underscore the need for class certification.

6       **D.    Plaintiffs Have Satisfied All of the Prerequisites for a Class Action.**

7       When Burger King's legally and factually unsound challenges to liability, standing, and

8   mootness are eliminated, as they should be, what remains is a paradigmatic class action.

9               **1.    This Case Is a Prototypical Class Action.**

10      As explained in depth in Plaintiffs' Class Cert. Memo, this case is precisely the type of

11  case that courts routinely certify as a class action.  *See* Class Cert. Memo at 16-17 & n.15.

12      Indeed, Burger King's attempt to distinguish Plaintiffs' cases by saying that *Moeller v.*

13  *Taco Bell Corp.*, 220 F.R.D. 604 (N.D. Cal. 2004), and the other cases Plaintiffs cite involved

14  "corporate-owned stores, across-the-board policy or lack of one, or the existence of the same

15  barrier at multiple locations traceable to a policy or action of a single defendant," BK Opp. at 15

16  n.17, succeeds only in describing this case to a "T" and underscoring the appropriateness of class

17  certification.  Not only do the leased BKLs have the same status as corporate-owned stores, but

18  Plaintiffs have demonstrated an across-the-board policy of general instructions to comply with

19  the law, coupled with an across-the-board policy of failing to enforce those policies to ensure

20  compliance with the ADA.  Class Cert. Memo at 9-15.

21      The existence of "the 'same categories' of architectural barriers" at multiple locations is

22  traceable to the above policies and actions.  *Moeller*, 220 F.R.D. at 609-10 (citing *Arnold*, 148

23  F.R.D. at 449).  Indeed, the link between Burger King and the BKLs is far closer than that in

24  many of the cases cited in Plaintiffs' Class Cert. Memo.  For example, in two of the cases

25  disabled residents were permitted to proceed as a class against the entity in charge of voting for

26

27      [9] Dkt. #185-2 at 4 (store 977; "applicable building code" does not refer to ANSI-1961);
28  185-3 at 4 (store 1864, same); 185-4 at 4 (store 1943, same); 185-5 at 4 (store 2032, same); 185-6 at 4 (store 2055, same); 185-7 at 4 (store 2288, same); 185-8 at 4 (store 2505, same).

the inaccessibility of various polling places. *See Lightbourn v. County of El Paso, Tx*, 118 F.3d 421, 423-26 (5th Cir. 1997); *Nat'l Org. of Disability v. Tartaglione*, 2001 WL 1258089, at *1-5 (E.D. Pa. Oct 22, 2001).[10]  In none of these cases was there a single entity with total control and a policy allowing discrimination.  Yet, all were certified.

In the face of Plaintiffs' extensive list of certified classes of individuals with disabilities challenging access barriers, *see* Class Cert. Memo. at 16-17 & n.15, Burger King can only cite four inapposite opinions from Florida district courts from 2001 or earlier, BK Opp. at 16 & n.18. In *Access Now, Inc. v. Walt Disney World Co.*, 211 F.R.D. 452 (M.D. Fla. 2001), the court noted that "[t]he parties do *not* dispute that the Defendants' facilities each possess a unique architectural style." *Id.* at 455 (emphasis added).  Here, Plaintiffs do.  Moreover, Plaintiffs have alleged and documented common policies, designs, practices, and decisions, allegations not sufficiently articulated in the Florida cases.[11]

### 2.    The Proposed Class Is So Numerous that Joinder Is Impracticable.

Plaintiffs have presented (1) census figures demonstrating that there is a huge number of people in California who use wheelchairs and scooters; (2) declarations of 48 putative class members who all allege discrimination at California BKLs; and (3) evidence that Burger King is a popular fast food restaurant, leading to the common sense conclusion that it has many patrons.[12] Burger King does not dispute any of this information, except to challenge the declarations generally.  Even if the declarants misstated some of the facts of their experiences, which

---

[10]  Similarly, in *Access Now, Inc. v. AHM CGH, Inc.*, 2000 WL 1809979 (S.D. Fla. July 12, 2000), the court certified a class of individuals with disabilities against "affiliated acute care hospitals, ambulatory surgical centers, specialty clinics, and medical office buildings."

[11]  The other cases contain no analysis of the evidence offered of common policies, designs, and decisions, so it is impossible to compare them to this case.  Moreover, at least one contains an erroneous understanding of the commonality requirement.  *See Ass'n for Disabled Ams., Inc. v. Motiva Enters., LLC*, No. 99-0580 at *4 (S.D. Fla. Oct. 18, 1999) (BK Opp. Ex. C) (stating that plaintiffs failed to show that common issues predominate).

[12]  A court may make common sense assumptions to support a finding that joinder would be impracticable.  *Moeller*, 220 F.R.D. at 608.  *Moeller* held numerosity satisfied without a single declaration from absent class members.

Plaintiffs deny, their mere existence demonstrates that there are a substantial number of mobility-impaired patrons of BKLs who allege discrimination.  At this stage, Plaintiffs need not *prove* that such discrimination exists, but rather that the class of people alleging such discrimination is so numerous that joinder is impracticable.  *See, e.g.*, *Bautista-Perez*, 2009 WL 2031759, at *7.

Burger King argues that the use of census figures is improper in the face of *Moeller v. Taco Bell*, which relied expressly and heavily on census figures.  220 F.R.D. at 608 (citing census data).  Burger King cites *Celano v. Marriott International, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007), in which the court held that census data were insufficient to demonstrate numerosity with respect to a class of individuals alleging barriers at Marriott hotel golf courses.  Common sense suggests that the number of hotel golfers is smaller than the number of fast food patrons.

Finally, Burger King argues that Plaintiffs must demonstrate that *each* BKL was visited by a large number of individuals.  BK Opp. at 13.  This case does not seek individual subclasses for each BKL, but rather seeks a class of all individuals who have patronized or been deterred from patronizing BKLs throughout California.

### 3.     There Are Common Questions of Law and Fact.

"All questions of fact and law need not be common to satisfy the rule [23(a)(2)].  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Nor does Burger King refute any of the numerous common questions in Plaintiffs' Class Cert. Memo.  *See* Class Cert. Memo at 20-21.

As demonstrated above, Burger King's failure to develop, let alone enforce, a policy ensuring required access is sufficient to establish commonality.  *See supra* at 3 (citing, e.g., *Astrue*, 2008 WL 4279674, at *4).  This is a complete answer to Burger King's objection that Plaintiffs have not shown a policy that caused the barriers alleged by Named Plaintiffs and Plaintiffs' declarants.  *See* BK Opp. at 14.  As in *Californians for Disability Rights*, certification is appropriate where Plaintiffs have demonstrated that "the common question addressed by this lawsuit is whether and to what extent [Defendant] has violated the ADA on a 'systematic basis for many years through the use of improper design guidelines and the failure to ensure

1  compliance with even those deficient guidelines.'"  249 F.R.D. at 346; *see also Access Now, Inc.*

2  *v. Ambulatory Surgery Ctr. Group, Ltd*, 197 F.R.D. 522, 526 (S.D. Fla. 2000) (commonality

3  satisfied where loosely affiliated defendants "availed themselves of a common program of

4  construction, design, and building code/ADA review").  Furthermore, Burger King never

5  disputes that construction and alterations must be approved by Burger King, that Burger King

6  requires the restaurants to be consistent with its current image, and that Burger King has and

7  enforces repair and maintenance standards and monitors the restaurants' compliance with all of

8  its standards.  Class Cert. Memo at 9-15.

9       Burger King argues that the existence of the "readily achievable" standard obviates any

10  commonality.  BK Opp. at 18.  This argument was squarely rejected by *Moeller*, which held that

11  "the readily achievable issue 'hinges, in part, on various corporation-wide factors such as the

12  availability of resources' and thus presents a question common to the class."  220 F.R.D. at 610

13  (quoting *Arnold*, 158 F.R.D. at 449).  Burger King also suggests that certification is inappropriate

14  because the BKLs have a "unique alteration history, resulting in significant individual variations

15  in terms of structure, design, facilities and accommodations," and because some restaurants lack

16  queue lines.[13]  BK Opp. at 6-7.  Variation among facilities is insufficient to defeat commonality.

17  *See, e.g.*, *Moeller*, 220 F.R.D. at 609 ("The 'unique architecture' argument has been rejected by a

18  number of courts in disability cases.").[14]

19

20       [13]  Burger King appears to believe its queue line discussion impeaches Plaintiffs'
21  declarants' credibility.  It does not.  Burger King states, without citation, that "as many as 50% of
     those BKLs [mentioned by declarants] have never had a queue line."  BK Opp. at 2.  In support
22  of this argument, Burger King cites to only 3 out of 48 declarations of putative class members,
     and these 3 declarants visited a total of 4 out of 96 —or 4%—of the BKLs.  Boothby Supp. Decl.
23  ¶ 2.  In support of its statement that "at least half of the cited restaurants [in the Complaint] have
24  never had a queue line at all," BK Opp. at 6, Burger King relies on the declaration of an
     individual who surveyed the restaurants after Burger King's alteration program.  *See, e.g.*,
25  Blackseth Decl. Ex. 1 at 1 (Dkt. #180-9).  In any event, the presence and absence of queue lines
26  is a merits issue and far more than queue lines are at issue in this litigation.  *See, e.g.*, Class Cert.
     Memo at 4-8.

27       [14]  Moreover, Burger King has withheld from Plaintiffs a series of surveys demonstrating
28  the conditions in the BKL restaurants prior to its recent alteration program.  Judge Larson granted
                                                                                  (continued...)

### 4.   Named Plaintiffs' Claims Are Typical of Those of the Proposed Class.

Plaintiffs have suffered the same legal injury as the class:  They have been harmed by common architectural barriers for which defendant Burger King has non-delegable liability. The fact that these barriers occur in restaurants built and altered at different times is not relevant for typicality purposes.  Plaintiffs' claims, like those of all other class members, arise under 42 U.S.C. § 12182(a), which prohibits discrimination on the basis of disability in places of public accommodation.  "Discrimination" under that provision is comprehensively defined by the provisions that follow it to include barriers in post-January 26, 1993 construction, *id.* § 12183(a)(1), in post-January 26, 1992 alterations, *id.* § 12183(a)(2), *and* in existing facilities where it is "readily achievable" to remove the barriers, *id.* § 12182(b)(2)(A)(iv); *see* Dkt. #69 at 5.  Significantly, the question whether a barrier exists in any of these facilities is evaluated against the *same* standards:  the DOJ Standards for Accessible Design, 28 C.F.R. pt. 36, app. A.[15] Even if the statutory basis were different, given the similarity of the discriminatory experiences, Plaintiffs' claims would be typical.  *See Rodriguez v. Hayes*, — F.3d —, 2009 WL 2526622, at *11 (9th Cir. 2009) (claims under different statutes not atypical, because class alleged to be victims of same practice); *see also Bautista-Perez*, 2009 WL 2031759, at *7 ("[C]lass certification does not require each class member to prosecute an identical legal theory.  Instead, it is sufficient to demonstrate a common set of operative facts.").

The only cases Burger King cites as support for the proposition that "the ADA's design and construction requirements are inapplicable" to the Named Plaintiffs' claims are cases in which the alleged discriminatory *events* pre-dated the ADA.  *See Voytek v. Univ. of Cal.*, 1994 WL 478805 (N.D. Cal. 1994) (employment discrimination case); *Colon v. League of United*

---

[14](...continued)
Plaintiffs' motion to compel the surveys, *see* Dkt. # 162, but Burger King has indicated that it will file objections to that ruling.  Unless it produces the surveys, it cannot rely on the unaltered conditions in the restaurants.  *Cf. United States v. Nobles*, 422 U.S. 225, 239-40 (1975) (holding that investigator could testify only if relevant portions of his report were produced).

[15]  *See* 28 C.F.R. § 36.406(a) (new construction and alterations required to comply with the Standards); *see also Johnson v. Kriplani*, 2008 WL 2620378 (E.D. Cal. July 2, 2008) ("non-compliance with [the Standards] can demonstrate a prima facie barrier" in a pre-1993 facility).

1   *Latin Am. Citizens*, 91 F.3d 140 (5th Cir. 1996) (unpublished) (dicta that *if* the events had

2   preceded the passage of the ADA, the court would lack jurisdiction).  Here, the events at issue

3   are the conditions of the BKLs throughout the proposed class period, not conditions pre-dating

4   the ADA.

**5.      Proposed Class Counsel Will Protect the Interests of the Class.**

6          Confusing Rule 23(a)(4) with Rule 23(g), Burger King challenges the proposed class

7   counsel's adequacy solely because of possible overstaffing.[16]  Burger King presents absolutely no

8   evidence supporting its allegation, and cites no case law denying the appointment of class

9   counsel simply because "five separate law firms" have worked on the case.[17]  Indeed, to the

10  extent there is any risk of such activity, such considerations are properly addressed at the stage at

11  which counsel request fees.  *See* Fed. R. Civ. P. 23(h) and 2003 advisory committee notes

12  (discussing the award of "reasonable" attorneys fees).  Proposed class counsel have demonstrated

13  their prompt and capable handling of the extensive discovery, motion practice, and client

14  management involved in this matter.  Class Cert. Memo at 24.  Proposed counsel have also

15  demonstrated their adequacy as class counsel.  Class Cert. Memo at 23-24.

**6.      The Proposed Class Satisfies Rule 23(b)(2).**

17         Burger King's non-delegable duty, its denial of responsibility, and its failure to

18  implement effective policies demonstrates compellingly the need for injunctive relief in this case.

19  This makes the case appropriate for certification under Rule 23(b)(2), as Burger King has "acted

20  or refused to act on grounds that apply generally to the class, so that final injunctive relief or

21  corresponding declaratory relief is appropriate respecting the class as a whole."

22         In opposition to Rule 23(b)(2) certification, Burger King argues standing and mootness,

---

[16]  Burger King's only argument regarding the purported inadequacy of the Named Plaintiffs relates to their alleged lack of standing.  As explained above, *see supra* Section II.B, that argument is without merit.  Named Plaintiffs have no conflicts with the proposed class and have demonstrated their desire to fight for its rights.  Class Cert. Memo at 22-23.

[17]  Moreover, only two law firms seek appointment as lead counsel:  Fox & Robertson, P.C. and Lewis, Feinberg, Lee, Renaker & Jackson, P.C.  Lee Decl. ¶ 2 (Dkt. #138-2); Robertson Decl. ¶ 2 (Dkt. #138-3).

1    neither of which has merit and both of which are addressed above.  "[E]ven if the challenged

2    design features had been fully remedied in all of the [buildings] built or remodeled since 1982,

3    such 'mootness' would pose no obstacle to (b)(2) certification." *Arnold*, 158 F.R.D. at 455.[18]

4        Burger King also argues that the damages claims, which arise under California law,

5    require highly individualized proof and present large damages amounts.[19]  Burger King does not

6    even attempt to address *Moeller* in this context, which certified an almost identical class for

7    classwide injunctive relief and statutory damages.  *Moeller*, 220 F.R.D. at 612-13.  This case

8    involves only statutory damages, which do not require an individualized analysis of the extent of

9    harm, but can rather be awarded based on a simple claims process.  *Arnold*, 158 F.R.D. at 453.

10   Likewise, large amounts of damages do not render this case inappropriate for certification under

11   Rule 23(b)(2).  *Id.* at 452.  Instead, civil rights cases like this one present the "paradigm of the

12   type of action for which the (b)(2) form was created."  *Id.*; *see Moeller*, 220 F.R.D. at 612-13.[20]

13       **E.    Plaintiffs' State Law Claims Are Valid and Should Be Certified.**

14       Burger King argues that it is not liable under state law.  This is a merits question that is

15   common to the class.  Burger King is also wrong.  California Civil Code Section 52 establishes

16   the liability of "[w]hoever denies, aids or incites a denial, or makes any discrimination or

17   distinction contrary to" the mandates of the Unruh Act.  Similarly, California Civil Code Section

18   54.3(a) establishes the liability of any person or entity "who denies or interferes with admittance

19   to or enjoyment of the public facilities" covered by the CDPA, or who "otherwise interferes with

20

21       [18]  Bizarrely, Burger King argues that the proposed class definition is not limited to
22   Burger King patrons.  BK Opp. at 24.  It is unclear where it gets this understanding, as the
     proposed class definition is for individuals who use wheelchairs and scooters who were or have
23   been denied full and equal enjoyment of California BKLs.  Class Cert. Memo at "Notice."

24       [19]  Burger King's guesses as to damages amounts for select declarants are premature and
     speculative.
25

26       [20]  Whether the class is ultimately entitled to statutory damages, and who among the class
     is so entitled, are both merits issues.  Moreover, Burger King's citation of recent amendments
27   to the California Civil Code are irrelevant, as those amendments explicitly do not apply to this case
     and cannot be used to interpret the prior statute's application here.  Cal. Civ. Code § 55.57(a)
28   ("[N]o inference shall be drawn from provisions contained in this part concerning the state of the
     law as it existed prior to January 1, 2009.").

1    the rights of an individual with a disability" guaranteed by that statute.  Burger King asserts that,

2    because "Unruh and the CDPA limit liability to those who actually make or incite

3    discrimination," those claims should be stricken from the class definition.  BK Opp. at 24.  The

4    expansive and sweeping statutory language is far broader than Burger King asserts.  Regardless

5    of its scope, however, Plaintiffs have demonstrated that Burger King, at the least, exerts control

6    that "aids or incites" a denial of access.  More importantly, whether Burger King has "aided,"

7    "incited" or "ma[d]e discrimination" by its actions and failures is question of law common to the

8    entire class.

9            Burger King also argues that the legislature's failure to amend Civil Code sections 52(a)

10   and 54(a) precludes the finding that liable parties under the ADA are liable parties under the

11   Unruh and CDPA.  BK Opp. at 25.  Burger King does not bother even to cite, much less address,

12   the recent California Supreme Court decision squarely rejecting arguments almost identical to

13   this one.  *See Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 670-73 (2009) (rejecting argument that

14   non-amendment of Section 52 precluded strict liability for violation of ADA).  The court held,

15           Section 52 authorizes a damages action against any person who "makes any
             discrimination . . . contrary to Section 51." By adding subdivision (f) to section
16           51, making all ADA violations—whether or not involving intentional
             discrimination—violations of the Unruh Civil Rights Act as well, the Legislature
17           included ADA violations in the category of "discrimination" contrary to section
             51, thus making them remediable under section 52.  As the *Lentini* court
18           explained, quoting an earlier district court decision, "'Because the Unruh Act has
             adopted the full expanse of the ADA, it must follow, that the same *standards for*
19           *liability* apply under both Acts.'"

20   *Id.* at 672 (emphasis added) (quoting *Lentini v. Cal. Ctr. for the Arts*, 370 F.3d 837, 847 (9th Cir.

21   2004)).  *Munson* therefore compels the conclusion that, in addition to liability under the terms of

22   the Unruh Act itself, Burger King's leasehold interest is also sufficient to establish liability under

23   the Unruh Act through the incorporation of the ADA.

24   **III.    CONCLUSION**

25           For the reasons set forth above and in Plaintiffs' Class Cert. Memo, Named Plaintiffs

26   request that this Court, pursuant to Rules 23(a) and 23(b)(2), certify a class in this case.

27   ///

28   ///

Dated: September 3, 2009

Respectfully submitted,

By:     /s/ Bill Lann Lee
Bill Lann Lee (State Bar No. 108452)
Andrew Lah (State Bar No. 234580)
Julia Campins (State Bar No. 238023)
LEWIS, FEINBERG, LEE, RENAKER
& JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612
Tel:    (510) 839-6824
Fax:    (510) 839-7839
blee@lewisfeinberg.com
alah@lewisfeinberg.com
jcampins@lewisfeinberg.com

Timothy P. Fox (State Bar No. 157750)
Amy Robertson (*pro hac vice*)
FOX & ROBERTSON, P.C.
104 Broadway, Suite 400
Denver, CO 80203
Telephone: (303) 595-9700
TTY: (877) 595-9706
Facsimile: (303) 595-9705
tfox@foxrob.com
arob@foxrob.com

Linda D. Kilb (State Bar No. 136101)
DISABILITY RIGHTS EDUCATION &
DEFENSE FUND
2212 Sixth Street
Berkeley, CA 94710
Tel:    (510) 644-2555
Fax:    (510) 841-8645
lkilb@dredf.org

Mari Mayeda (State Bar No. 110947)
P O Box 5138
Berkeley, CA 94705
Tel:    (510) 848-3331
Fax:    (510) 841-8115
marimayeda@earthlink.net

Antonio M. Lawson (State Bar No. 140823)
LAWSON LAW OFFICES
160 Franklin Street, Suite 204
Oakland, CA 94607
Tel:    (510) 419-0940
Fax:    (510) 419-0948
tony@lawsonlawoffices.com

*Attorneys for Plaintiffs*