IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL CASTANEDA, KATHERINE CORBETT, and JOSEPH WELLNER, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BURGER KING CORPORATION,<br><br>Defendant.<br>_____/ | No. C 08-04262 WHA<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT** |

**INTRODUCTION**

This class settlement is said by the parties to be the largest ever on a per class member basis and per facility basis in a disability case involving public accommodations. This is an ADA class action alleging barriers to access on behalf of mobility-impaired customers of restaurants leased by defendants. Ten classes were certified — one for each of the restaurants at which a named plaintiff allegedly encountered an access barrier — with separate trials scheduled for each class. Plaintiffs and defendant now move for final approval of a stipulated settlement agreement that would resolve this action as to all ten certified classes. Additionally, class counsel moves for an award of attorney's fees in the amount of $2,274,187.86, and costs and expenses in the amount of $225,138.87. Lead plaintiffs Miguel Castaneda, Katherine Corbett and Joseph Wellner also request compensation for their services to the class. For the

1  reasons explained below, the proposed settlement is fair, reasonable, adequate and in the best
2  interests of the class, and final approval of the proposed settlement is **GRANTED**.

**STATEMENT**

Named plaintiffs, Miguel Castaneda, Katherine Corbett, and Joseph Wellner, use wheelchairs or scooters for mobility. They brought this action to remedy alleged architectural barriers to access at restaurants that defendant Burger King Corporation leases to franchisees in California. The putative class sued for an injunction ordering defendant to adopt policies that would ensure access for customers who used wheelchairs and scooters and to bring the leased restaurants into compliance with the Americans with Disabilities Act, 42 U.S.C. 12101, Section 51 of the California Civil Code (the Unruh Civil Rights Act), and Section 54 of the California Civil Code (the California Disables Persons Act). They also sought the statutory minimum damages for each offense, which includes $4,000 for each violation. Plaintiffs alleged that a violation occurred each time a patron visited a store and encountered an access barrier there.

Plaintiffs sought to certify a single class including patrons of all Burger King restaurants in California leased by Burger King to franchisees. There were approximately 92 such stores. A September 2009 order held that whether or not any particular store was ever out of ADA compliance would have to be determined store by store and feature by feature, and therefore certified a separate class for each of the ten individual restaurants where a named plaintiff encountered alleged access barriers (Dkt. No. 226). Class members were required to opt-in to be eligible to claim individualized statutory damages pursuant to the Unruh Act and the CDPA. The deadline for persons to opt in as class members was March 1, 2010. Three hundred eighty-two people opted in by the deadline. An additional 27 individuals contacted class counsel and may or may not be damages claimants. The parties have agreed that these individuals shall be sent damages notices and claims forms and shall be allowed to make valid claims for monetary damages if they so choose.

Summary judgment motions relating to the first class scheduled for trial — the class of patrons of the Burger King restaurant located at 6021 Central Avenue, in El Cerrito — were pending when the parties filed their joint motion for preliminary approval of class settlement.

2

1  Preliminary approval was granted on March 18, 2010. A deadline for class members to opt out
2  of the settlement for injunctive relief was June 7, 2010.

3  Additionally, class members could opt in to receive monetary damages by March 1,
4  2010. Each damages claimant had to complete a claim form documenting his or her eligible
5  visits to one of the ten restaurants where he or she encountered a barrier to access. Monetary
6  awards to each damages claimant will be distributed *pro rata* based on the total number of visits
7  by each damages claimant with a maximum number of six visits for which each claimant may
8  obtain recovery. Class members who did not opt in to receive damages claims did not release
9  their rights to pursue such claims separately even if they did not opt out of the injunctive relief
10 settlement.

**ANALYSIS**

12 Three issues are addressed in this order. *First*, this order will explain why the pending
13 settlement is fair, reasonable and adequate under FRCP 23(e) and *Hanlon v. Chrysler Corp.*,
14 150 F.3d 1011, 1026 (9th Cir. 1998) (setting forth the factors to be considered when evaluating
15 class action settlements). *Second*, this order will explain why the lead plaintiffs should be fairly
16 compensated for their time and effort in this litigation. *Third*, this order will provide the basis
17 for why the awarded attorney's fees are reasonable.

18 **1.    THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

19 Having scrutinized the terms of the settlement agreement, proposed plan of distribution,
20 and adequacy of notice to class members, and having considered the motion for final approval
21 of the settlement agreement, the declarations submitted therewith, oral argument by counsel,
22 and all other documents of record in this matter, this order holds that the settlement agreement
23 is in the best interests of the class and is fair, reasonable and adequate under the factors set forth
24 in *Hanlon*.

25 No class members have opted out of the injunctive relief settlement. No objections to
26 the settlement have been filed. The settlement agreement provides for injunctive relief,
27 including the elimination of alleged accessibility barriers, the use of mandatory checklists with
28 specific accessibility items for remodeling, alterations, repairs and maintenance, and the

3

1  monitoring of compliance at the ten restaurants.  The agreement requires three types of periodic
2  access surveys including (1) daily surveys conducted by tenant franchisee managers to ensure
3  frequently-changing elements remain in compliance such as that movable condiment dispensers
4  are kept within reach of persons in wheelchairs and that the path of travel to restrooms is not
5  obstructed, (2) mid-level surveys conducted every three years including items such as parking
6  lot restriping and restroom fixture, and (3) successor remodel surveys conducted whenever a
7  restaurant is remodeled, which occurs approximately once every 20 years.  The settlement
8  agreement provides for the Court to retain jurisdiction to enforce the terms of settlement for
9  four years after the settlement agreement has been finalized: July 12, 2014.

10  The settlement also provides for a cash payment of $5,000,000 to the named plaintiffs
11  and the 382 class members who opted in stating that they wished to pursue damages claims.
12  Monetary awards to each claimant will be distributed *pro rata* based on the total number of
13  visits by each damages claimant to one of the ten restaurants where he or she encountered a
14  barrier, with a maximum number of six visits for which each damages claimant can obtain
15  recovery.  Each of these damage claimants must complete a claim form documenting his or her
16  eligible visits. Payment for the costs of notifying the class up to $15,000 and administering the
17  settlement up to $50,000 shall be paid by class counsel, while costs above those amounts shall
18  come from the settlement fund.  Nevertheless, the parties estimate that even after such funds are
19  deducted, each of the 385 claimants will receive over $4000 per eligible visit up to six visits.
20  The average recovery is approximately $13,000 for each claimant (Fox Decl. ¶ 2).

21  Plaintiffs estimated damages as high as $20,000,000 with respect to the ten certification
22  restaurants (Fox Decl. ¶ 8).  Nevertheless, this assumed that plaintiffs could recover $4,000 per
23  visit to each restaurant by each class member without limitation to the number of visits, which
24  would have been disputed at trial.  The parties say that on a per-class-member and per-facility
25  basis, this settlement is the highest monetary settlement ever in a disability access case
26  involving public accommodation (Br. at 1).  It is at the least an adequate recovery in light of the
27  risks of litigation.

28  Accordingly, final approval of the settlement and plan of allocation shall be **GRANTED**.

4

**2.     ATTORNEY'S FEES AND INCENTIVE FEES.**

Attorney's fees will not come from the $5,000,000 in the damages fund, but shall be paid separately by defendant. The parties agreed that defendant Burger King Corporation will not oppose a request of attorney's fees and costs up to $2,500,000. As noted above, class counsel moved for an award of attorney's fees in the amount of $2,274,187.86, and claim costs and expenses in the amount of $256,947.93. They seek a total of $2,500,000 for fees and expenses. Class counsel claim a lodestar in this matter of $1,188,519.10. They seek a multiplier of just under two.

The class notices informed class members that they had the right to object to the structure and amount of attorney's fees. Class counsel's motion for fees was also posted to the website established by class counsel since May 17. No objections were received.

Class counsel therefore seeks fees and costs of approximately 33% of the total amount to be paid by defendant. This is more than the 25% benchmark that the Ninth Circuit has established for percentage-of-the-fund cases. However, the monetary damages in this settlement — although quite substantial — are only part of the relief obtained for class members. As noted above, the settlement also provides for injunctive relief at the ten restaurants in question to eliminate accessibility barriers. Additionally, the monetary recovery of approximately $13,000 on average to damages claimants is very good.

Considering the foregoing, the request for attorney's fees is reasonable and well-justified. Accordingly, the request for attorney's fees and costs of $2,500,000 is **GRANTED**.

**.3.     COMPENSATION FOR LEAD PLAINTIFFS.**

Lead plaintiffs Miguel Castaneda, Katherine Corbett and Joseph Wellner seek compensation for the hours they spent representing and working on behalf of the class. They do not seek incentive fees or payments in a fixed dollar amount.

Mr. Castaneda claims out-of-pocket travel expenses of $450, plus $350 for caregiver fees so that he could attend court hearings, the pre-disposition meeting, and a deposition. He estimates that he spent about 111 hours working on this case, including reviewing and commenting on litigation documents, responding to discovery requests, working with class

counsel to prepare this case for trial, preparing for and attending his deposition, and meeting with class counsel regarding the settlement agreement. These activities required him to miss three-and-a-half days of work (Castaneda Decl. at 1–6).

Ms. Corbett claims out-of-pocket expenses of $295. She estimates that she spent about 100 hours representing the class (Corbett Decl. at 4–5).

Mr. Wellner estimates he spent about 30 hours performing work as a named plaintiff. He does not claim additional out-of-pocket expenses (Wellner Decl. at 3–4).

Generally, additional benefits to named plaintiffs beyond those received by the rest of the class are disfavored. If a settlement is not good enough for named plaintiffs, it is usually not good enough for the class. Nevertheless, named plaintiffs should be compensated for their out-of-pocket expenses. Accordingly, Mr. Castaneda is awarded $1800 and Ms. Corbett is awarded $1295, in addition to the class settlement. Mr. Wellner shall be awarded $1000 in addition to the class settlement.

**CONCLUSION**

Accordingly, it is hereby ordered as follows:

1. The Court hereby finds that the settlement is fair, reasonable, and adequate as to the class, plaintiffs and defendants, that it is the product of good faith, arms-length negotiations between the parties, and that the settlement is consistent with public policy and fully complies with all applicable provisions of law. The breadth of the release to be imposed on the absent class members is sufficiently narrow. Absent class members who have not opted in to pursue damages claims release only non-monetary claims relating to the accessibility of the ten restaurants based on conduct preceding final approval of the settlement agreement. They do not release any claims for monetary damages. The final settlement is therefore approved.

2. The notice as mailed to all class members fairly and adequately described the proposed settlement, the manner in which class members could object to or participate in the settlement, and the manner in which class members could opt out of the class, was the best notice practicable under the circumstances, was valid, due and sufficient notice to all class members, and complied fully with the Federal Rules of Civil Procedure, due process, and all

6

other applicable laws. A full and fair opportunity was afforded to class members to participate in the proceedings to determine whether the proposed settlement should be given final approval. Accordingly, this order holds that all class members who did not exclude themselves from the settlement by filing a timely request for exclusion are bound by this settlement order and judgment.

3. The Court retains continuing jurisdiction over the class action, named plaintiffs, the class, and defendant for four years (until July 12, 2014) from the date of entry of this order in order to supervise the implementation, enforcement, construction and interpretation of the revised settlement agreement and this order.

4. The Court hereby awards Plaintiff's Counsel attorneys' fees and costs of $2.5 million, to be paid separately by defendants, one-half now and the other half when the fund is completely wound up.

5. Damages claimants who opted in to receive monetary damages prior to the deadline of March 10, 2010, have until August 13, 2010, to complete, sign, and submit their claim forms for shares of the damages fund.

6. Named plaintiff Castaneda is awarded $1800, Named Plaintiff Wellner is awarded $1000, and Named Plaintiff Corbett is awarded $1295 for compensation for their out-of-pocket expenses in this action.

**IT IS SO ORDERED.**

Dated: July 12, 2010.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE